UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

FLORENTINO MELGADEJO, on behalf of :
himself and all others similarly
situated,                          :     12 Civ. 6852 (RA)(HBP)

                    Plaintiffs,    :     REPORT AND
                                         RECOMMENDATION
     -against-                     :

S & D FRUITS & VEGETABLES INC.,    :
SAL'S FRUIT, VEGETABLE AND GROCERY
INC. and SAMUEL OLEA, an           :
individual,
                                   :

                    Defendants.    :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE RONNIE ABRAMS, United States District

Judge,


I.   Introduction

          On September 11, 2012, Florentino Melgadejo, on behalf

of himself and all others similarly situated, commenced this

collective and putative class action pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor

Law ("NYLL") Sections 650 et seq. and the spread-of-hours wage

order of the New York Commissioner of Labor, 12 N.Y.C.R.R. § 142-

2.4, to recover unpaid wages, unpaid overtime compensation,

spread-of-hours pay, liquidated damages, statutory damages and attorneys' fees and costs.  Defendants Sal's Fruit, Vegetable and Grocery Inc. ("Sal's Grocery"), S & D Fruits & Vegetables Inc. ("S&D Grocery") and Samuel Olea have failed to answer or move with respect to the complaint.  On November 7, 2013, I issued an Order authorizing the FLSA collective and approving the proposed notice and consent forms.  Melgadejo v. S & D Fruits & Vegetables Inc., 12 Civ. 6852 (RA)(HBP), 2013 WL 5951189 (S.D.N.Y. Nov. 7, 2013).  I also issued a Report and Recommendation ("R&R") on November 7, 2013, recommending the denial of Melgadejo's application to certify the action as a class action with respect to the NYLL claims (Docket Item 44).  The R&R was adopted in full on December 5, 2013 by the Honorable Ronnie Abrams, United States District Judge.  Melgadejo v. S & D Fruits & Vegetables Inc., 12 Civ. 6852 (RA)(HBP), 2013 WL 6334581 (S.D.N.Y. Dec. 5, 2013).  On February 21, 2014, Judge Abrams entered a default judgment and referred this matter to me to conduct an inquest concerning plaintiffs' damages (Docket Items 64 & 65).

Pursuant to the Order of Reference, I issued a Scheduling Order on February 26, 2014, directing plaintiffs to serve and file their proposed findings of fact and conclusions of law by April 25, 2014 (Docket Item 66, ¶ 1).  My February 26, 2014 Order further provided:

Defendant shall submit its response to Plaintiffs' submissions, if any, no later than May 27, 2014.  IF DEFENDANT (1) FAILS TO RESPOND TO PLAINTIFFS' SUBMISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY MAY 27, 2014 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")

(Docket Item 66, ¶ 2) (emphasis in original).

Defendants have not made any written submission to me, nor have defendants contacted my chambers in any way.  Accordingly, I make the following findings of fact and conclusions of law on the basis of plaintiffs' written submissions alone.

For the reasons set forth below, I respectfully recommend that judgment be entered as follows:

| Plaintiff | Defendants Against Whom Judgment Should be Entered | Amount and Reason for Judgment Amounts |
|---|---|---|
| Melgadejo | Sal's Grocery & Samuel Olea | $62,037.90 (unpaid overtime) $36,064.58 (liq. damages) |
| Melgadejo | All Defendants | $32,354.10 (unpaid overtime) $41,886.45 (liq. damages) $300.000 (NYLL statutory damages) |

| Aviles | Sal's Grocery & Samuel Olea | $219,900.45 (unpaid overtime) $128,743.11 (liq. damages) $2,100.00 (NYLL statutory damages) |
|--------|------------------------------|---------------------------------------------------------------------------------------------|

Aviles — Sal's Grocery & Samuel Olea — $219,900.45 (unpaid overtime) $128,743.11 (liq. damages) $2,100.00 (NYLL statutory damages)

Aviles — S&D Grocery & Samuel Olea — $18,321.60 (unpaid overtime) $36,643.20 (liq. damages) $2,500.00 (NYLL statutory damages)

Cortes — Sal's Grocery & Samuel Olea — $53,172.00 (unpaid overtime) $85,725.00 (liq. damages) $2,500.00 (NYLL statutory damages)

Gonzalez — Sal's Grocery & Samuel Olea — $12,939.60 (unpaid overtime) $3,234.90 (liq. damages)

Gonzalez — S&D Grocery & Samuel Olea — $39,004.80 (unpaid overtime) $21,175.20 (liq. damages)

Guzman — All Defendants — $0.00

Hernandez — Sal's Grocery & Samuel Olea — $6,649.60 (unpaid minimum wage) $42,663.95 (unpaid overtime) $9,369.75 (unpaid spread-of-hours) $14,670.83 (liq. damages)

| | | |
|---|---|---|
| <u>Martinez</u> | Sal's Grocery & Samuel Olea | $59,442.75 (unpaid overtime) $38,562.75 (liq. damages) |
| <u>Martinez</u> | S&D Grocery & Samuel Olea | $11,353.50 (unpaid overtime) $14,191.88 (liq. damages) |
| <u>Andres Olea</u> | Sal's Grocery & Samuel Olea | $178,568.43 (unpaid overtime) $121,718.68 (liq. damages) $2,500.00 (NYLL statutory damages) |
| <u>All Plaintiffs</u> | All Defendants | $25,746.20 (attorneys' fees) $1,320.27 (costs) |

The total recommended award is $1,325,361.48.[1]

## II.   <u>Findings of Fact</u>

### A.   <u>The Parties</u>

1.  Plaintiff Florentino Melgadejo was employed by defendants as a stock person and cashier in the vegetable depart-

---

[1]Although Melgadejo sought pre-judgment interest, post-judgment interest and damages for conversion in the complaint (Complaint, dated September 5, 2012 (Docket Item 1) ("Compl.") ¶¶ 63-66 & ¶¶ 8, 11 of "Prayer for Relief" therein), plaintiffs' counsel's damages submission does not seek recovery for these items (Affidavit in Support of Motion for Default, dated April 25, 2014 (Docket Item 68) ("Platzek Aff."), <u>passim</u>). Accordingly, I deem this aspect of Melgadejo's damages claim to be abandoned.

ment of both S&D Grocery and Sal's Grocery from June 2008 through
April 2011 (Compl. ¶¶ 21, 32;[2] Platzek Aff. ¶ 14).  He worked at
Sal's Grocery only from June 2008 through April 2010, and from
May 2010 through April 2011 he worked at both S&D Grocery and
Sal's Grocery depending on the need at each location (Declaration
of Florentino Melgadejo, dated January 3, 2014, ("Melgadejo
Decl.") ¶¶ 3-4, annexed as Exhibit I to Platzek Aff.).  Melgadejo
received deliveries, stocked shelves and operated the cash
register (Compl. ¶ 33).  He filed his consent to join the FLSA
collective action on April 19, 2013 (Docket Item 30).

        2.  Opt-in plaintiff Luz Castillo Aviles was employed
at Sal's Grocery from June 2005 until August 2011 and at S&D
Grocery from August 2011 through April 2012 (Declaration of Luz
Castillo Aviles, dated January 2, 2014 ("Aviles Decl.") ¶¶ 3-4,
annexed as Exhibit K to Platzek Aff.).  His duties included
"cleaning vegetables, preparing salads, and packaging fruit"
(Aviles Decl. ¶ 5).  He filed his consent to join the FLSA
collective action on April 19, 2013 (Docket Item 28).

---

[2] As a result of defendants' default, all the allegations of
the complaint, except as to the amount of damages, must be taken
as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849,
854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L.
Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World
Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971),
rev'd on other grounds, 409 U.S. 363 (1973).

3.   Opt-in plaintiff Luis Cortes was employed at Sal's
Grocery from February 2010 through November 2012 (Declaration of
Luis Cortes, dated January 2, 2014 ("Cortes Decl.") ¶ 2, annexed
as Exhibit M to Platzek Aff.).  His duties included delivering
produce and working in the meat and fruit departments (Cortes
Decl. ¶ 3).  He filed his consent to join the FLSA collective
action on April 19, 2013 (Docket Item 32).

4.   Opt-in plaintiff Jose Manuel Gonzalez was employed
as a cashier and stock person at Sal's Grocery from July 2008
until December 2008 and at S&D Grocery from December 2008 through
October 2010 (Declaration of Jose Manuel Gonzalez, dated January
2, 2014 ("Gonzalez Decl.") ¶¶ 3-5, annexed as Exhibit O to
Platzek Aff.).  He filed his consent to join the FLSA collective
action on April 19, 2013 (Docket Item 29).

5.   Opt-in plaintiff Vicente F. Guzman filed his
consent to join the FLSA collective action on April 19, 2013
(Docket Item 27), but plaintiffs' counsel has been unable to
locate Guzman and believes he has left the country (Platzek Aff.
¶ 24).  Because no information has been submitted that would
support an award of damages to Guzman, I consider his claim to be
abandoned and recommend that he be awarded nothing.

6.   Opt-in plaintiff Edith Hernandez was employed at
Sal's Grocery from May 5, 2006 through April 15, 2010 (Declara-

7

tion of Edith Hernandez, dated January 2, 2014 ("Hernandez Decl.") ¶ 2, annexed as Exhibit R to Platzek Aff.).  Her duties included "working as a cashier, cleaning vegetables, making juice and arranging flowers" (Hernandez Decl. ¶ 3).  She filed her consent to join the FLSA collective action on April 19, 2013 (Docket Item 31).

      7.  Opt-in plaintiff Octavio Martinez was employed at Sal's Grocery from April 2009 until August 2010, S&D Grocery from August 2010 until December 2010 and again at Sal's Grocery from December 2010 through April 2011 (Declaration of Octavio Martinez, dated January 2, 2014 ("Martinez Decl.") ¶¶ 3-5, annexed as Exhibit T to Platzek Aff.).  His duties included "restocking shelves, making deliveries, and mopping floors" (Martinez Decl. ¶ 6).  He filed his consent to join the FLSA collective action on May 6, 2013 (Docket Item 37).

      8.  Opt-in plaintiff Andres Olea was employed at Sal's Grocery from June 2000 through June 2013 (Declaration of Andres Olea, dated January 8, 2014 ("Olea Decl.") ¶ 2, annexed as Exhibit V to Platzek Aff.).  His duties included "cutting and preparing meats in the meat department" (Olea Decl. ¶ 3).  He filed his consent to join the FLSA collective action on April 19, 2013 (Docket Item 33).

9.   Defendant S & D Fruits & Vegetables Inc. is a New York corporation, having its principal place of business at 123 East 110th Street, New York, New York 10029 (Compl. ¶¶ 7, 30). S&D Grocery is a grocery store (Compl. ¶ 30).

10.   Defendant Sal's Fruit, Vegetable and Grocery Inc., doing business as Sal's Fruit and Grocery, is a New York corporation, having is principal place of business at 57 West Fordham Road #A, Bronx, New York 10468 (Compl. ¶¶ 8, 31).  Sal's Grocery is a grocery store (Compl. ¶ 31).

11.   Defendant Samuel Olea is the owner and operator of both Sal's Grocery and S&D Grocery (Compl. ¶ 9).

12.   Defendants engaged in interstate commerce by "handl[ing] goods that ha[d] been and continue[d] to be moved in interstate commerce" and all plaintiffs were "required to handle goods that ha[d] been and [were] regularly moved in interstate commerce" (Compl. ¶¶ 10, 14).  In addition, "the amount of qualifying annual volume of business for Defendants exceeds $500,000.00" (Compl. ¶ 10).

B.   Hours Worked
     and Compensation

13.   Melgadejo worked 86 hours per week at the defendant stores -- 13.5 hours per day Sunday through Friday (7:30 AM

9

to 9:00 PM), with one 15-minute unpaid break per day and an
additional 5 hours per day on Tuesdays buying merchandise for the
stores (10:00 PM to 3:00 AM) (Melgadejo Decl. ¶ 7; Platzek Aff.
¶ 14).  He worked at Sal's Grocery from June 2008 through April
2010 and at both of the defendant grocery stores from May 2010
through April 2011 (Melgadejo Decl. ¶¶ 3-4).

      14.   Melgadejo was paid $360.00 per week or $9.00 per
hour for the first 40 hours he worked (Platzek Aff. ¶¶ 14-15).[3]
He received no compensation for the remaining 46 hours of work he
performed each week nor did he receive spread-of-hours pay
(Platzek Aff. ¶¶ 14-15; Melgadejo Decl. ¶¶ 6-7).[4]

---

    [3]Under the FLSA, "[t]here is a rebuttable presumption that a
weekly salary covers 40 hours." Doo Nam Yang v. ACBL Corp., 427
F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (Sand, D.J.), quoting Giles
v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)
(Motley, D.J.); see also Rosendo v. Everbrighten Inc., 13 Civ.
7256 (JGK)(FM), 2015 WL 1600057 at *3-*4 (S.D.N.Y. Apr. 7, 2015)
(Maas, M.J.) (Report and Recommendation) ("[W]hen an employer has
defaulted and offers no rebuttal, the Court calculates the
employee's regular hourly rate by dividing his weekly salary by
forty hours."), adopted at, 2015 WL 4557147 (S.D.N.Y. July 28,
2015) (Koeltl, D.J.).  Because of defendants' default, I conclude
that plaintiffs' stated weekly rates of pay only apply to the
first 40 hours worked per week.

    [4]The complaint alleges that Melgadejo was paid at the rate
of $370.00 per week, or $9.25 per hour, for the first 40 hours he
worked each week and that he worked approximately 81 hours per
week beginning "in or about 2008" through April 2011 (Compl. ¶¶
35-36); however, in his declaration, Melgadejo states that he was
paid $360.00 per week, or $9.00 per hour, and worked 86 hours per
week "from June 2008-April 2011" (Melgadejo Decl. ¶¶ 3-4, 6-7).
Because the complaint has no evidentiary weight, I rely upon the
(continued...)

15.   From June 2005 through August 2011, Aviles generally worked 94.5 hours per week -- 13.5 hours per day Monday through Sunday (7:30 AM to 9:00 PM) -- at Sal's Grocery; however, he also received one Sunday off per month, meaning he worked 81 hours per week once a month (Aviles Decl. ¶¶ 3, 7; Platzek Aff. ¶ 21).  From August 2011 through April 2012, Aviles worked 72 hours per week -- 12 hours per day Monday through Saturday (8:00 AM to 8:00 PM) -- at S&D Grocery (Aviles ¶¶ 4, 8; Platzek Aff. ¶ 21).

16.   Aviles was paid $11.00 per hour for the first 40 hours he worked or $440.00 per week at both Sal's Grocery and S&D Grocery (Aviles Decl. ¶ 7; Platzek Aff. ¶ 21).  While working at Sal's Grocery from June 2005 through August 2011, Aviles received no compensation for the remaining 41 to 54.5 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Aviles Decl. ¶¶ 3, 6-7; Platzek Aff. ¶ 21).  He also received no compensation for the remaining 32 hours of overtime work he performed at S&D Grocery each week nor did he receive spread-of-hours pay from August 2011 through April 2012 (Aviles Decl. ¶ 6, 8; Platzek Aff. ¶ 21).

---

[4](...continued)
pay rate and time period stated in Melgadejo's declaration.

17.   Cortes worked 72 hours per week -- 12 hours per day Monday through Saturday (8:00 AM to 8:00 PM) -- at Sal's Grocery from February 2010 through November 2012 (Cortes Decl. ¶¶ 2, 5; Platzek Aff. ¶ 22).

18.   Cortes was paid $7.50 per hour for the first 40 hours he worked or $300.00 per week (Cortes Decl. ¶ 5; Platzek Aff. ¶ 22).  He received no compensation for the remaining 32 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Cortes Decl. ¶¶ 4-5; Platzek Aff. ¶ 22).

19.   From July 2008 through December 2008, Gonzalez worked at least 81 hours per week -- 13.5 hours per day Monday through Saturday and sometimes Sunday (7:30 AM to 9:00 PM) -- at Sal's Grocery (Gonzalez Decl. ¶¶ 3, 7; Platzek Aff. ¶ 23).  From December 2008 through October 2010, he worked at least 72 hours per week -- 12 hours per day Monday through Saturday and some-times Sunday (8:00 AM to 8:00 PM) -- at S&D Grocery (Gonzalez Decl. ¶¶ 4, 8; Platzek Aff. ¶ 23).

20.   Gonzalez was paid $8.00 per hour for the first forty hours he worked at Sal's Grocery or $320.00 per week (Gonzalez Decl. ¶ 7; Platzek Aff. ¶ 23).  While employed at Sal's Grocery, he received no compensation for the remaining 41 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Gonzalez Decl. ¶¶ 6-7; Platzek Aff. ¶ 23).

Gonzalez was paid $8.50 per hour for the first forty hours he worked at S&D Grocery or $340.00 per week (Gonzalez Decl. ¶ 8; Platzek Aff. ¶ 23).  While employed at S&D Grocery, he received no compensation for the remaining 32 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Gonzalez Decl. ¶¶ 6, 8; Platzek Aff. ¶ 23).

21.  Hernandez worked 91 hours per week -- 13 hours per day Monday through Sunday (8:00 AM to 9:00 PM) -- at Sal's Grocery from May 5, 2006 through April 15, 2010 (Hernandez Decl. ¶ 5; Platzek Aff. ¶ 25).  She was allowed one 15-minute unpaid break each day (Hernandez Decl. ¶ 5; Platzek Aff. ¶ 25).

22.  Hernandez was paid $6.25 per hour for all hours she worked, and she did not receive an overtime premium for the 51 hours she worked in excess of 40 hours per week (Hernandez Decl. ¶ 5; Platzek Aff. ¶ 25).  She also did not receive spread-of-hours pay (Hernandez Decl. ¶ 5; Platzek Aff. ¶ 25).

23.  Martinez worked 69 hours per week -- 11.5 hours per day Monday through Saturday with one 15-minute unpaid break each day (7:30 AM to 7:00 PM) -- at (1) Sal's Grocery from April 2009 until August 2010; (2) S&D Grocery from August 2010 until December 2010 and (3) Sal's Grocery, again, from December 2010 through April 2011 (Martinez Decl. ¶¶ 3-5, 8-9; Platzek Aff. ¶ 26).

13

24.   Martinez was paid $15.00 per hour for the first forty hours he worked at both stores or $600.00 per week (Martinez Decl. ¶¶ 8-9; Platzek Aff. ¶ 26).  He received no compensation at either store for the remaining 29 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Martinez Decl. ¶¶ 8-9; Platzek Aff. ¶ 26).

25.   From June 2000 until January 2012, Andres Olea worked 75 hours per week -- 12.5 hours per day Sunday through Friday with one 15-minute unpaid break each day (7:30 AM to 8:00 PM) -- at Sal's Grocery (Olea Decl. ¶¶ 2, 5; Platzek Aff. ¶ 27). From January 2012 through June 2013, he worked 54 hours per week -- 9 hours per day Sunday through Friday (8:00 AM to 5:00 PM) -- at Sal's Grocery (Olea Decl. ¶ 7; Platzek Aff. ¶ 27).

26.   For the first forty hours he worked each week, Andres Olea was paid $3.75 per hour or $150.00 per week from "June 2000 through 2003," $8.75 per hour or a rate of $350.00 per week from "2003 through 2007" and $12.50 per hour or a rate of $500.00 per week from "2007 to January 2012" (Platzek Aff. ¶ 27; Olea Decl. ¶ 5).  During those periods, Andres Olea received no compensation for the remaining 35 hours of overtime work he performed each week nor did he receive spread-of-hours pay (Olea Decl. ¶¶ 4-5; Platzek Aff. ¶ 27).  From January 2012 through June 2013, Andres Olea was paid $7.25 per hour for the first 40 hours

14

worked per week and was paid time and a half for the hours worked in excess of 40 hours per week (Olea Decl. ¶ 7; Platzek Aff. ¶ 27).

27.   Plaintiffs Melgadejo, Aviles, Cortes, Gonzalez, Hernandez, Martinez and Andres Olea were paid in cash, except that Martinez was paid by check beginning in May 2010 and Andres Olea was paid by check beginning in January 2012 (Melgadejo Decl. ¶ 8; Aviles Decl. ¶ 9; Cortes Decl. ¶ 6; Gonzalez Decl. ¶ 8; Hernandez Decl. ¶ 6; Martinez Decl. ¶¶ 8-9; Olea Decl. ¶¶ 6-7).

28.   Plaintiffs Melgadejo, Aviles, Cortes, Gonzalez, Hernandez and Andres Olea were not provided with accurate and complete wage statements on each pay day; however, Andreas Olea began receiving wage statements in January 2012 (Platzek Aff. ¶¶ 14, 21-23, 26-27).

29.   Defendants intentionally and willfully failed to furnish plaintiffs with accurate wage statements and to pay plaintiffs the required minimum wage, overtime and spread-of-hours compensation (Compl. ¶¶ 15, 41-42, 46, 50, 54, 58, 61, 68).

C.   Attorneys' Fees and Costs

30.   In support of the request for attorneys' fees, plaintiffs' counsel has submitted an affidavit from Russell J. Platzek, Esq., an associate of Borrelli & Associates, P.L.L.C.

15

("B&A"), the firm retained to represent plaintiffs (Platzek Aff. ¶¶ 1-2, 58).  As detailed in the affidavit, plaintiffs seek to recover for 144.65 hours of legal and paralegal services as follows:

| Attorney or Paralegal | Rate Sought | No. of Hours | Fee Sought |
|---|---|---|---|
| Michael J. Borrelli<br>Founding and managing partner, primarily practicing labor and employment law for at least 11 years | $500/hour | 11.50 | $5,750.00 |
| Abby H. Natelson<br>Former B&A associate, 2008 law school graduate | $400/hour | 19.00 | $7,600.00 |
| Alexander T. Coleman<br>Lead Associate with 5 years at B&A, oversees and directly supervises all B&A associates' work | $400/hour | 1.00 | $400.00 |
| Ayanna T. Blake<br>Former B&A associate, 2005 law school graduate | $400/hour | 27.62 | $11,048.00 |
| Jonathan R. Friedman<br>Former B&A associate, admitted to practice in 2010 | $400/hour | 1.20 | $480.00 |
| Russell J. Platzek<br>Associate, 1998 law school graduate, experience in labor law | $400/hour | 35.20 | $14,080.00 |
| Ana G. Guevara<br>Paralegal at B&A for approximately four years | $125/hour | 1.60 | $200.00 |

| | | | |
|---|---|---|---|
| Anamda Fortuna<br>Paralegal | $125/hour | 11.00 | $1,375.00 |
| Carolina C. Otero<br>Former B&A paralegal | $125/hour | 1.70 | $212.50 |
| Jarissa Peralta<br>Paralegal | $125/hour | 32.70 | $4,087.50 |
| Kristina M. Travone<br>Former B&A paralegal | $125/hour | 1.53 | $191.25 |
| Yamille Z. Prendes<br>Former B&A paralegal | $125/hour | 0.30 | $37.50 |
| Intern | $125/hour | 0.30 | $37.50 |
| | Total | 144.65 | $45,499.25 |

(Platzek Aff., ¶¶ 32-66 & Attorney Invoice, dated April 25, 2014
("Invoice"), at 23, annexed thereto as Exhibit X).[5]

31.  Counsel provided the qualifications of each
attorney and paralegal for whom fees are sought; however, counsel
failed to provide the identity or qualifications of the intern
for whom fees are sought (Platzek Aff., ¶¶ 32-66).  Plaintiffs'
counsel also submitted time records maintained by the attorneys
and staff members which indicate the date, the hours expended and
the nature of the work performed by each attorney, paralegal and
intern (Invoice, passim).

---

[5]The table set forth above corrects certain miscalculations
made by plaintiffs' counsel (see Invoice, at 23).

III.  <u>Conclusions of Law</u>

    A.  <u>Jurisdiction and Venue</u>

        32.  This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 <u>et</u> <u>seq</u>.  The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331.

        33.  The Court has supplementary jurisdiction over the state-law claims asserted in the complaint pursuant to 28 U.S.C. § 1367(a).

        34.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)-(d) because the events that gave rise to the claims occurred within this district and one or more of defendants reside within this district.

    B.  <u>Statute of Limitations</u>

        1.  The FLSA's Three-Year
            <u>Statute of Limitations</u>

        35.  A plaintiff bringing a claim under the FLSA must do so within "two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation

18

and for liquidated damages 'accrues' when the employer fails to
pay the required compensation for any workweek at the regular pay
day for the period in which the workweek ends."  29 C.F.R.
§ 790.21(b); Nakahata v. New York-Presbyterian Healthcare Sys.,
Inc., 723 F.3d 192, 198 (2d Cir. 2013).  Potential members of an
FLSA collective action must affirmatively opt-in to the action,
29 U.S.C. § 216(b), and "the statute of limitations period
continues to run with respect to each potential plaintiff's
collective action claim until that plaintiff files the written
consent form opting into the suit."  Whitehorn v. Wolfgang's
Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (Sand,
D.J.); see 29 U.S.C. § 256.

36.  Because defendants' violations of the FLSA were
willful, the three-year statute of limitations period is applica-
ble.

37.  Thus, plaintiffs FLSA claims are limited to the
three-year period preceding the date on which each either filed
the complaint or joined the action.[6]  Accordingly, (1) any FLSA

---

[6]The law is unsettled as to whether the statute of
limitations for party-plaintiff Melgadejo's FLSA claims was
tolled from the date he filed his complaint (September 11, 2012)
or the date he filed his consent to join the collective action
(April 19, 2013), see Thind v. Healthfirst Mgmt. Servs., LLC, 14
Civ. 9539 (LGS), 2015 WL 4554252 at *3 (S.D.N.Y. July 29, 2015)
(Schofield, D.J.) (concluding that the party plaintiff's FLSA
                                              (continued...)

claims that party-plaintiff Melgadejo may have are time-barred with respect to the period preceding September 11, 2009, (2) any FLSA claims that Aviles, Cortes, Gonzalez, Hernandez and Andres Olea may have are time-barred with respect to the period preceding April 19, 2010 and (3) any FLSA claims that Martinez may have are time-barred with respect to the period preceding May 6, 2010.

      2.  The NYLL's Six-Year
          <u>Statute of Limitations</u>

38.   A plaintiff bringing a claim under the NYLL must do so within six years, and "[t]he statute of limitations shall be tolled from the date an employee files a complaint."  N.Y. Labor L. § 663(3).

---

    [6](...continued)
claims commenced once the complaint <u>and</u> consent to join the collective were filed); <u>Davis v. Lenox Hill Hosp.</u>, 03 Civ. 3746 (DLC), 2004 WL 1926086 at *8 (S.D.N.Y. Aug. 31, 2004) (Cote, D.J.) (same).  However, "the Statute of Limitations is an affirmative . . . defense which may be waived if not promptly pleaded . . . [and] the party wishing to raise the defense is obliged to plead the Statute of Limitations at the earliest possible moment."  <u>Strauss v. Douglas Aircraft Co.</u>, 404 F.2d 1152, 1155 (2d Cir. 1968).  By virtue of their default, defendants have waived any affirmative defenses, such as the statute of limitations.  Accordingly, I deem Melgadejo's claims to cover the three-year period prior to the filing of the complaint, <u>i.e.</u> the three-year period prior to September 11, 2012.

39.  Thus, any NYLL claims plaintiffs may have based on conduct occurring before September 11, 2006 are time-barred because the complaint was filed on September 11, 2012.

C.  Wage Claims

    1.  Recovery of Minimum Wage and
        Overtime Under the FLSA and NYLL

40.  Pursuant to the FLSA and NYLL, an employee is entitled to at least the minimum wage for the first 40 hours worked per week and, for hours worked in excess of 40 hours per week, one and one-half times the greater of the employee's hourly rate or the minimum wage.  29 U.S.C. §§ 206(a), 207(a)(1); N.Y. Labor L. § 652; 12 N.Y.C.R.R. §§ 142-2.1, 142-2.2; Rosendo v. Everbrighten Inc., supra, 2015 WL 1600057 at *3-*4.

41.  "In order to establish liability under the FLSA, a plaintiff must prove [among other things] that both the employee and the employer are covered by the law."  Liang Huo v. Go Sushi Go 9th Ave., 13 Civ. 6573 (KBF), 2014 WL 1413532 at *2 (S.D.N.Y. Apr. 10, 2014) (Forrest, D.J.).  The FLSA applies to employees who are "engaged in commerce or in the production of goods for commerce" or where their employer is "an enterprise engaged in commerce or in the production of goods for commerce," meaning, among other things, that it "has employees engaged in commerce"

21

or it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and its "annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. §§ 203(s)(1), 206(a).  "The requirements to make out a claim under the NYLL mirror the FLSA in most respects; however, the NYLL does not require a plaintiff to show that the employer was involved in interstate commerce or had $500,000 in minimum annual sales." <u>Liang Huo v. Go Sushi Go 9th Ave.</u>, <u>supra</u>, 2014 WL 1413532 at *3; <u>see</u> N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.2.

42.  Plaintiffs and defendants are covered under the FLSA and NYLL.  29 U.S.C. §§ 203(s)(1), 206(a); N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.2.

43.  During the following time periods, the FLSA provided for the following minimum wage rates:  (1) from September 11, 2006 through July 23, 2007, $5.15 per hour; (2) from July 24, 2007 through July 23, 2008, $5.85 per hour; (3) from July 24, 2008 through July 23, 2009, $6.55 per hour and (4) from July 24, 2009 to date, $7.25 per hour.  29 U.S.C. § 206.

44.  During the following time periods, the NYLL provided for the following minimum wage rates:  (1) from September 11, 2006 through December 31, 2006, $6.75 per hour; (2) from January 1, 2007 through July 23, 2009, $7.15 per hour and (3)

22

from July 24, 2009 through December 30, 2013, $7.25 per hour. N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.1(a).

45. Additionally, at all relevant times, both federal and state law required that employees be paid not less than one and one-half times the regular rate for any time worked beyond the first 40 hours per week. 29 U.S.C. § 207(a)(1); N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.2.

46. Actual damages for minimum wage and overtime compensation owed will be calculated pursuant to the NYLL because during all relevant time periods the state minimum wage under the NYLL was greater than or equal to the federal minimum wage under the FLSA.

47. In light of defendants' default, I deem plaintiffs' recollections and estimates of hours worked to be correct. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946).

a. Melgadejo's
Unpaid Overtime

48. Melgadejo seeks $125,740.31 in unpaid overtime compensation based on an 86-hour workweek[7] at rates of $7.15 per

---

[7]Plaintiffs' counsel erroneously excluded Melgadejo's break periods when calculating his damages (see Platzek Aff. ¶¶ 14-15).
(continued...)

hour from June 1, 2008 through July 23, 2009 (60 weeks), $7.25
per hour from July 24, 2009 through September 10, 2009 (7 weeks)
and $9.00 per hour from September 11, 2009 through September 11,
2012 (156 weeks) (Platzek Aff. ¶ 15).[8]

               i.  Sal's Grocery
                 and Samuel Olea

    49.  From June 1, 2008 through April 30, 2010,
Melgadejo worked 86 hours per week for 99.9 weeks (699 days ÷
seven days per week) at Sal's Grocery and was paid $360.00 per
week, or $9.00 per hour, for the first 40 hours he worked each
week and nothing for the remaining 46 hours worked per week
(Melgadejo Decl. ¶ 7; Platzek Aff. ¶¶ 14-15).  He should have
been paid at one and one-half times his regular rate -- or $13.50

_____

    [7](...continued)
See 29 C.F.R. § 785.18 ("Rest periods of short duration, running
from 5 minutes to about 20 minutes, . . . are customarily paid
for as working time.  They must be counted as hours worked.");
see also Solis v. Cindy's Total Care, Inc., 10 Civ. 7242 (PAE),
2012 WL 28141 at *19 (S.D.N.Y. Jan. 5, 2012) (Engelmayer, D.J.);
Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 121 n.34 (S.D.N.Y.
2011) (Scheindlin, D.J.); Wong v. Hunda Glass Corp., 09 Civ. 4402
(RLE), 2010 WL 2541698 at *3 (S.D.N.Y. June 23, 2010) (Ellis,
M.J.).

    [8]Plaintiffs' counsel appears to erroneously calculate
Melgadejo's damages using September 11, 2012 as his final day of
employment with defendants (Platzek Aff. ¶¶ 15-16).  In his
declaration, Melgadejo states that he worked for defendants from
June 2008 through April 2011 (Melgadejo Decl. ¶¶ 3-4).
Accordingly, Melgadejo is only entitled to unpaid overtime
compensation through April 30, 2011.

per hour –- for the 46 hours per week he worked in excess of 40 hours.[9]  Melgadejo is owed $621.00 per week (46 hours x $13.50 per hour) for the hours he worked at Sal's Grocery in excess of 40 hours per week.  The total unpaid overtime owed to Melgadejo for this period by Sal's Grocery and Samuel Olea is $62,037.90 ($621.00 per week x 99.9 weeks).

ii.  Sal's Grocery, S&D
Grocery and Samuel Olea

50.  From May 1, 2010 through April 30, 2011, Melgadejo worked 86 hours per week for 52.1 weeks (365 days ÷ seven days per week) at both Sal's Grocery and S&D Grocery and was paid $360.00 per week, or $9.00 per hour, for the first 40 hours he worked each week and nothing for the remaining 46 hours worked per week (Melgadejo Decl. ¶ 7; Platzek Aff. ¶¶ 14-15).  He should have been paid at one and one-half times his regular rate –- or $13.50 per hour –- for the 46 hours per week he worked in excess

---

[9]Plaintiffs' counsel appears to erroneously calculate plaintiffs' unpaid overtime compensation under the NYLL using the lower minimum wage rates for some of the relevant time periods instead of plaintiffs' higher hourly rates (see Platzek Aff. ¶ 15 & Ex. W).  Plaintiffs are entitled to overtime compensation equal to one and one-half times their regular rates, which under the NYLL and FLSA is the greater of their hourly rate or the applicable minimum wage.  See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113-14 (2d Cir. 2013); Meyer v. U.S. Tennis Ass'n, 297 F.R.D. 75, 80 (S.D.N.Y. 2013) (Carter, D.J.).

of 40 hours.  Melgadejo is owed $621.00 per week (46 hours x
$13.50 per hour) for the hours he worked at Sal's Grocery and S&D
Grocery in excess of 40 hours per week.  The total unpaid over-
time owed to Melgadejo for this period by Sal's Grocery, S&D
Grocery and Samuel Olea[10] is $32,354.10 ($621.00 per week x 52.1
weeks).

        b.  Aviles'
        Unpaid Overtime

51.  Aviles seeks a total of $140,877.30 in unpaid
overtime compensation from defendants (see Platzek Aff., Ex. W).

        i.  Sal's Grocery
        and Samuel Olea

52.  Aviles' claims for unpaid overtime compensation
from Sal's Grocery and Samuel Olea for hours worked from June 1,
2005 through September 10, 2006 are time-barred, for the reasons
set forth in ¶ 39, above.  From September 11, 2006 through August
31, 2011, Aviles worked for 259.4 weeks (1,816 days ÷ seven days
per week) at Sal's Grocery (Aviles Decl. ¶ 3).  Aviles worked
94.5 hours per week for 199.4 of those weeks and 81 hours per

_____

[10]Because of their default, none of the defendants can
contest their joint and several liability for Melgadejo's damages
during this time period; therefore, I assess Melgadejo's actual
damages for this period of time against all defendants.

week for 60 of those weeks (Aviles was allowed one Sunday off per month) (Aviles Decl. ¶ 7).[11]  Aviles was paid $440.00 per week, or $11.00 per hour, for the first 40 hours he worked each week and nothing for the remaining 41 to 54.5 hours worked per week (Aviles Decl. ¶ 7; Platzek Aff. ¶ 21).  He should have been paid at one and one-half times his regular rate -- or $16.50 per hour -- for the hours he worked in excess of 40 hours per week. Aviles should have been paid $676.50 per week (41 hours x $16.50 per hour) for 60 weeks and $899.25 per week (54.5 hours x $16.50 per hour) for 199.4 weeks for the hours he worked at Sal's Grocery in excess of 40 hours per week.  Sal's Grocery and Samuel Olea owe Aviles $40,590.00 ($676.50 per week x 60 weeks) and $179,310.45 ($899.25 per week x 199.4 weeks), or a total of $219,900.45 ($40,590.00 + $179,310.45), in unpaid overtime compensation.

---

[11]Although Aviles' declaration states that Aviles worked for Sal's Grocery "from June 2005-August 2011" and for S&D Grocery "from August 2011-April 2012," the declaration does not state when in August 2011 Aviles ceased working for Sal's Grocery and began working for S&D Grocery (Aviles Decl. ¶¶ 3-4).  Plaintiffs' counsel's submission states that Aviles worked for Sal's Grocery "through August 2010" and for S&D Grocery "from September 2010 through April 2012" (Platzek Aff. ¶ 21).  It appears that plaintiffs' counsel's reference to the year 2010 in the affidavit is a typographical error and that plaintiffs' counsel intended to state "through August 2011" and "from September 2011 through April 2012."  Accordingly, for ease of calculation, I have assumed that Aviles worked for Sal's Grocery until August 31, 2011 and began working for S&D Grocery on September 1, 2011.

ii.  S&D Grocery
and Samuel Olea

53.  From September 1, 2011 through April 30, 2012, Aviles worked 72 hours per week for 34.7 weeks (243 days ÷ seven days per week) at S&D Grocery and was paid $440.00 per week, or $11.00 per hour, for the first 40 hours he worked each week and nothing for the remaining 32 hours worked per week (Aviles Decl. ¶ 8; Platzek Aff. ¶ 21).  He should have been paid at one and one-half times his regular rate -- or $16.50 per hour -- for the 32 hours per week he worked in excess of 40 hours.  Aviles is owed $528.00 per week (32 hours x $16.50 per hour) for the hours he worked at S&D Grocery in excess of 40 hours per week.  The total unpaid overtime owed to Aviles for this period by S&D Grocery and Samuel Olea is $18,321.60 ($528.00 per week x 34.7 weeks).

c.  Cortes' Unpaid Overtime from
Sal's Grocery and Samuel Olea

54.  Cortes seeks a total of $51,744.00 in unpaid overtime compensation from Sal's Grocery and Samuel Olea (see Platzek Aff., Ex. W).

55.  From February 1, 2010 through November 30, 2012, Cortes worked 72 hours per week for 147.7 weeks (1,034 days ÷

28

seven days per week) at Sal's Grocery and was paid $300.00 per week, or $7.50 per hour, for the first 40 hours he worked each week and nothing for the remaining 32 hours worked per week (Cortes Decl. ¶¶ 2, 4-5).  He should have been paid at one and one-half times his regular rate -- or $11.25 per hour -- for the 32 hours per week he worked in excess of 40 hours.  Cortes is owed $360.00 per week (32 hours x $11.25 per hour) for the hours he worked at Sal's Grocery in excess of 40 hours per week.  The total unpaid overtime owed to Cortes for this period by Sal's Grocery and Samuel Olea is $53,172.00 ($360.00 per week x 147.7 weeks).

### d.  Gonzalez's
### Unpaid Overtime

56.  Gonzalez seeks a total of $44,188.05 in unpaid overtime compensation from defendants (see Platzek Aff., Ex. W).

### i.  Sal's Grocery
### and Samuel Olea

57.  From July 1, 2008 through December 31, 2008, Gonzalez worked 81 hours per week from Monday through Saturday for 26.3 weeks (184 days ÷ seven days per week) at Sal's Grocery and was paid $320.00 per week, or $8.00 per hour, for the first 40 hours he worked each week and nothing for the remaining 41

hours worked per week (Platzek Aff. ¶ 23; Gonzalez Decl. ¶¶ 3, 7).[12]  He should have been paid at one and one-half times the regular rate –– or $12.00 per hour –– for the 41 hours per week he worked in excess of 40 hours.  Gonzalez is owed $492.00 per week (41 hours x $12.00 per hour) for the hours he worked at Sal's Grocery in excess of 40 hours per week.  The total unpaid overtime owed to Gonzalez for this period by Sal's Grocery and Samuel Olea is $12,939.60 ($492.00 per week x 26.3 weeks).

ii.  S&D Grocery
<u>and Samuel Olea</u>

58.  From January 1, 2009 through October 31, 2010, Gonzalez worked 72 hours per week for 95.6 weeks (669 days ÷ seven days per week) at S&D Grocery and was paid $340.00 per week, or $8.50 per hour, for the first 40 hours he worked each week and nothing for the remaining 32 hours worked per week (Platzek Aff. ¶ 23; Gonzalez Decl. ¶¶ 4, 8).  He should have paid at one and one-half times the regular rate – or $12.75 per hour

---

[12]Although Gonzalez's declaration states that he worked for Sal's Grocery "from July 2008-December 2008" and for S&D Grocery "from December 2008-October 2010," the declaration does not state when in December 2008 Gonzalez ceased working for Sal's Grocery and began working for S&D Grocery (Gonzalez Decl. ¶¶ 3-4). Accordingly, for ease of calculation, I have adopted plaintiffs' counsel's calculation that Gonzalez worked for Sal's Grocery from July 1, 2008 through December 31, 2008 and worked for S&D Grocery from January 1, 2009 through October 31, 2010 (Platzek Aff. ¶ 23).

-- for the 32 hours per week he worked in excess of 40 hours.
Gonzalez is owed $408.00 per week (32 hours x $12.75 per hour)
for the hours he worked at S&D Grocery in excess of 40 hours per
week.  The total unpaid overtime owed to Gonzalez for this period
by S&D Grocery and Samuel Olea is $39,004.80 ($408.00 per week x
95.6 weeks).

> e.  Hernandez's Unpaid Minimum Wage and
>     Overtime from Sal's Grocery and Samuel Olea

59.  Hernandez seeks a total of $16,318.29 in unpaid
overtime compensation from Sal's Grocery and Samuel Olea (see
Platzek Aff., Ex. W).  Hernandez also seeks unpaid minimum wage
compensation from Sal's Grocery and Samuel Olea (see Hernandez
Decl. ¶¶ 1, 5).

60.  Hernandez's claims for unpaid overtime and minimum
wage compensation from Sal's Grocery and Samuel Olea for hours
worked from May 5, 2006 through September 10, 2006 are time-
barred for the reasons set forth in ¶ 39, above.  From September
11, 2006 through April 15, 2010, Hernandez worked 91 hours per
week[13] for 187.6 weeks (1,313 days ÷ seven days per week) and was
paid $6.25 per hour for all 91 hours she worked each week, or

---

[13]Plaintiffs' counsel erroneously excluded Hernandez's break
periods when calculating her damages (see Platzek Aff. ¶ 25 & Ex.
W).

$568.75 per week (Hernandez Decl. ¶ 5; Platzek Aff. ¶ 25).  She should have been paid a base minimum wage of $6.75 per hour for 16 weeks from September 11, 2006 through December 31, 2006 (112 days ÷ seven days per week), $7.15 per hour for 133.6 weeks from January 1, 2007 through July 23, 2009 (935 days ÷ seven days per week) and $7.25 per hour for 38 weeks from July 24, 2009 through April 15, 2010 (266 days ÷ seven days per week) under New York law.  Accordingly, she should have been paid at one and one-half times her regular rate for the 51 hours per week she worked at Sal's Grocery in excess of 40 hours.  These overtime rates are $10.13 per hour from September 11, 2006 through December 31, 2006, $10.73 per hour from January 1, 2007 through July 23, 2009 and $10.88 per hour from July 24, 2009 through April 15, 2010.


### i.   Hernandez's
Unpaid Minimum Wage

61.  Because Hernandez was paid $6.25 per hour for the first 40 hours worked per week, she is owed $0.50 per hour for her first 40 hours worked per week from September 11, 2006 through December 31, 2006, $0.90 per hour for her first 40 hours worked per week from January 1, 2007 through July 23, 2009 and $1.00 per hour for her first 40 hours worked per week from July

24, 2009 through April 15, 2010 in unpaid minimum wage compensation.

62.  From September 11, 2006 through December 31, 2006, Hernandez is owed $20.00 per week (40 hours x $0.50 per hour). From January 1, 2007 through July 23, 2009, Hernandez is owed $36.00 per week (40 hours x $0.90 per hour).  From July 24, 2009 through April 15, 2010, Hernandez is owed $40.00 per week (40 hours x $1.00 per hour).  Sal's Grocery and Samuel Olea owe Hernandez $320.00 ($20.00 per week x 16 weeks), $4,809.60 ($36.00 per week x 133.6 weeks) and $1,520.00 ($40.00 per week x 38 weeks), or a total of $6,649.60 ($320.00 + $4,809.60 + $1,520.00), in unpaid minimum wage compensation.

### ii.  Hernandez's Unpaid Overtime

63.  Because Hernandez was paid $6.25 per hour for the 51 hours she worked in excess of her first 40 hours worked per week, she is owed $3.88 per hour from September 11, 2006 through December 31, 2006 ($6.75 minimum wage x 1.5 overtime rate - $6.25), $4.48 per hour from January 1, 2007 through July 23, 2009 ($7.15 minimum wage x 1.5 overtime rate - $6.25) and $4.63 per hour from July 24, 2009 through April 15, 2010 ($7.25 minimum wage x 1.5 overtime rate - $6.25) in unpaid overtime compensation.

64.  From September 11, 2006 through December 31, 2006, Hernandez is owed $197.88 per week (51 hours x $3.88 per hour). From January 1, 2007 through July 23, 2009, Hernandez is owed $228.48 per week (51 hours x $4.48 per hour).  From July 24, 2009 through April 15, 2010, Hernandez is owed $236.13 per week (51 hours x $4.63 per hour).  Sal's Grocery and Samuel Olea owe Hernandez $3,166.08 ($197.88 per week x 16 weeks), $30,524.93 ($228.48 per week x 133.6 weeks) and $8,972.94 ($236.13 per week x 38 weeks), or a total of $42,663.95 ($3,166.08 + $30,524.93 + $8,972.94), in unpaid overtime compensation.

### f.  Martinez's
### Unpaid Overtime

65.  Martinez seeks a total of $46,393.88 in unpaid overtime compensation from defendants (see Platzek Aff., Ex. W).

### i.  Sal's Grocery
### and Samuel Olea

66.  Martinez worked 69 hours per week[14] at Sal's Grocery for 74 weeks from April 1, 2009 through August 31, 2010 (518 days ÷ seven days per week) and for 17.1 weeks from January 1, 2011 through April 30, 2011 (120 days ÷ seven days per week)

---

[14]Plaintiffs' counsel erroneously excluded Martinez's break periods when calculating his damages (see Platzek Aff. ¶ 26 & Ex. W).

(Platzek Aff. ¶ 26; Martinez Decl. ¶¶ 3-5, 8-9).[15]  Martinez was
paid $600.00 per week, or $15.00 per hour, for the first 40 hours
he worked each week and nothing for the remaining 29 hours worked
per week (Platzek Aff. ¶ 26; Martinez Decl. ¶¶ 8-9).  He should
have been paid at one and one-half times his regular rate -- or
$22.50 per hour -- for those hours he worked in excess of 40
hours per week.  Martinez should have been paid $652.50 per week
(29 hours x $22.50 per hour) for the hours he worked in excess of
40 hours per week for the 91.1 weeks he worked at Sal's Grocery
(74 weeks + 17.1 weeks).  Sal's Grocery and Samuel Olea owe
Martinez $59,442.75 ($652.50 per week x 91.1 weeks) in unpaid
overtime compensation.

---

[15]Although Martinez's declaration states that Martinez
worked for Sal's Grocery "from April 2009-August 2010" and "from
December 2010-April 2011" and for S&D Grocery "from August 2010-
December 2011," the declaration does not state when in August
2010 Gonzalez ceased working for Sal's Grocery and began working
for S&D Grocery or when in December 2010 he ceased working for
S&D Grocery and returned to Sal's Grocery (Martinez Decl. ¶¶ 3-
5).  Plaintiffs' counsel's affidavit in support of default
similarly does not state when exactly Martinez switched employers
(Platzek Aff. ¶ 26).  To be consistent with my treatment of the
calculations for Aviles and Gonzalez, I have assumed that
Martinez worked for Sal's Grocery from April 1, 2009 through
August 31, 2010 and from January 1, 2011 through April 30, 2011,
and that he worked for S&D Grocery from September 1, 2010 through
December 31, 2010.

ii.  S&D Grocery
and Samuel Olea

67.  From September 1, 2010 through December 31, 2010,
Martinez worked 69 hours per week for 17.4 weeks (122 days ÷
seven days per week) at S&D Grocery and was paid $600.00 per
week, or $15.00 per hour, for the first 40 hours he worked each
week and nothing for the remaining 29 hours worked per week
(Platzek Aff. ¶ 26; Martinez Decl. ¶¶ 4, 9).  He should have been
paid at one and one-half times his regular rate  -- or $22.50 per
hour -- for the 29 hours per week he worked in excess of 40
hours.  Martinez is owed $652.50 per week (29 hours x $22.50 per
hour) for the hours he worked at S&D Grocery in excess of 40
hours per week.  The total unpaid overtime owed to Martinez for
this period by S&D Grocery and Samuel Olea is $11,353.50 ($652.50
per week x 17.4 weeks).

g.  Andres Olea's Unpaid Overtime
from Sal's Grocery and Samuel Olea

68.  Andres Olea seeks a total of $130,832.85 in unpaid
overtime compensation from Sal's Grocery and Samuel Olea (see
Platzek Aff., Ex. W).

69.  Andres Olea's claims for unpaid overtime compensa-
tion from Sal's Grocery and Samuel Olea for hours worked from
June 1, 2000 through September 10, 2006 are time-barred for the

reasons set forth in ¶ 39, above.  He also was properly paid at least the minimum wage and time and a half in overtime compensation from January 1, 2012 through June 30, 2013 (Platzek Aff. ¶ 27; Olea Decl. ¶ 7).  From September 11, 2006 through December 31, 2006, Andres Olea worked 75 hours per week[16] for 16 weeks at a rate of $350.00 per week, or $8.75 per hour, for the first 40 hours he worked each week and nothing for the remaining 35 hours worked per week (Platzek Aff. ¶ 27; Olea Decl. ¶ 5).[17]  He should have been paid at one and one half times his regular rate -- or $13.13 per hour -- for the hours he worked in excess of 40 hours during this time period.  From January 1, 2007 through December 31, 2011, Andres Olea worked 75 hours per week for 260.9 weeks at a rate of $500.00 per week, or $12.50 per hour, for the first 40 hours he worked each week and nothing for the remaining 35 hours worked per week (Platzek Aff. ¶ 27; Olea Decl. ¶ 5).  He should have been paid one and one-half times his regular rate -- or

[16]Plaintiffs' counsel erroneously excluded Andres Olea's break periods when calculating his damages (see Platzek Aff. ¶ 27 & Ex. W).

[17]Both Andres Olea's declaration and plaintiffs' counsel's submissions state that Andres Olea was paid $350.00 per week "from 2003 through 2007" and $500.00 per week "from 2007 to January 2012"; however, neither states when exactly Andres Olea's rate of pay changed in 2007, nor does either state when exactly his rate of pay changed in January 2012 (Olea Decl. ¶ 5; Platzek Aff. ¶ 27).  Accordingly, for ease of calculation, I assume that Andres Olea worked at the $350.00 rate from January 1, 2003 through December 31, 2006, and at the $500.00 rate from January 1, 2007 through December 31, 2011.

$18.75 per hour -- for those hours he worked in excess of 40 hours during this time period.  Andres Olea should have been paid $459.55 per week (35 hours x $13.13 per hour) for 16 weeks and $656.25 per week (35 hours x $18.75 per hour) for 260.9 weeks for the hours he worked at Sal's Grocery in excess of 40 hours per week.  Sal's Grocery and Samuel Olea owe Aviles $7,352.80 ($459.55 per week x 16 weeks) and $171,215.63 ($656.25 per week x 260.9 weeks), or a total of $178,568.43 ($7,352.80 + $171,215.63), in unpaid overtime compensation.

        h.  <u>Summary</u>

      70.  Accordingly, each plaintiff is owed the following unpaid compensation:  (1) Melgadejo, $62,037.90 in unpaid overtime compensation from Sal's Grocery and Samuel Olea and $32,354.10 in unpaid overtime compensation from Sal's Grocery, S&D Grocery and Samuel Olea; (2) Aviles, $219,900.45 in unpaid overtime compensation from Sal's Grocery and Samuel Olea and $18,321.60 in unpaid overtime compensation from S&D Grocery and Samuel Olea; (3) Cortes, $53,172.00 in unpaid overtime compensation from Sal's Grocery and Samuel Olea; (4) Gonzalez, $12,939.60 in unpaid overtime compensation from Sal's Grocery and Samuel Olea and $39,004.80 in unpaid overtime compensation from S&D Grocery and Samuel Olea; (5) Hernandez, $6,649.60 in unpaid

minimum wage compensation and $42,663.95 in unpaid overtime
compensation from Sal's Grocery and Samuel Olea; (6) Martinez,
$59,442.75 in unpaid overtime compensation from Sal's Grocery and
Samuel Olea and $11,353.50 in unpaid overtime compensation from
S&D Grocery and Samuel Olea and (7) Andres Olea, $178,568.43 in
unpaid overtime compensation from Sal's Grocery and Samuel Olea.

> 2.   Spread-of-Hours
>       Pay Under the NYLL

71.   Part 142-2.4 of Title 12 of New York's Official
Compilation of Codes, Rules and Regulations provides:

> An employee shall receive one hour's pay at the basic
> minimum hourly wage rate, in addition to the minimum
> wage required . . . for any day in which:
>
> (a) the spread of hours exceeds 10 hours; or
>
> (b) there is a split shift; or
>
> (c) both situations occur.

72.   "Spread-of-hours" is defined as "the interval
between the beginning and end of an employee's workday."  12
N.Y.C.R.R. § 142-2.18. "The spread of hours for any day includes
working time plus time off for meals plus intervals off duty."
12 N.Y.C.R.R. § 142-2.18.

73.   Courts in this Circuit disagree as to whether a
plaintiff who makes more than the minimum wage is entitled to
spread-of-hours compensation.  See, e.g., Malena v. Victoria's

39

Secret Direct, LLC, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012)
(Oetken, D.J.) (noting a split of authority on this issue).  Most
courts, however, hold that spread-of-hours compensation is only
available to workers making the minimum wage.  Williams v.
Tri-State Biodiesel, L.L.C., 13 Civ. 5041 (GWG), 2015 WL 305362
at *16 (S.D.N.Y. Jan. 23, 2015) (Gorenstein, M.J.) ("[R]ecent
case law [within this Circuit] has been nearly unanimous that the
spread-of-hours requirement extends only to workers paid at the
minimum-wage level.").  The judges adopting the majority view
rely on a New York Department of Labor opinion letter concluding
that only minimum wage workers are entitled to spread-of-hours
compensation and the fact that the spread-of-hours regulation
"makes reference to payment only beyond 'the minimum wage.'"
Williams v. Tri-State Biodiesel, L.L.C., supra, 2015 WL 305362 at
*16-*17, citing Malena v. Victoria's Secret Direct, LLC, supra,
886 F. Supp. 2d at 369, and N.Y.S. Dep't of Labor 3/16/07 Opinion
Letter at 1, File No. RO-07-0009.  I shall follow the majority
view and conclude that only plaintiffs making at or below the
minimum wage are entitled to spread-of-hours compensation.

a.  Plaintiffs Entitled to
    Spread-of-Hours Compensation

74.  Plaintiffs Melgadejo, Aviles, Cortes, Gonzalez,
Hernandez, Martinez and Andres Olea seek unpaid spread-of-hours
compensation (Platzek Aff., Ex. W).  However, only opt-in plain-
tiff Hernandez claims to have earned the minimum wage or less for
her regular rate of pay for the first 40 hours worked per week
(Platzek Aff. ¶¶ 14, 21-23, 25-27).  Accordingly, I conclude that
only Hernandez is entitled to spread-of-hours compensation.

b.  Edith Hernandez's Unpaid
    Spread-of-Hours Compensation

75.  For the reasons set forth in ¶ 39, above,
Hernandez's claims for compensation under the NYLL prior to
September 11, 2006 are time-barred.  From September 11, 2006
through April 15, 2010, Hernandez worked 11 hours per day, seven
days a week at Sal's Grocery and was paid $6.25 per hour and
received no overtime premium (Hernandez Decl. ¶ 5).  Hernandez
did not receive spread-of-hours compensation for any of the days
that she worked in excess of ten hours per day (Hernandez Decl. ¶
5).  She should have received an extra hour of pay at the minimum
wage rate of $6.75 for each of the 112 days she worked over ten
hours from September 11, 2006 through December 31, 2006, $7.15
for each of the 935 days she worked over ten hours from January

41

1, 2007 through July 23, 2009 and $7.25 for each of the 266 days she worked over ten hours from July 24, 2009 through April 15, 2010.

76.  Accordingly, Hernandez is owed $756.00 in spread-of-hours compensation from September 11, 2006 through December 31, 2006 (112 days x $6.75), $6,685.25 in spread-of-hours compen-sation form January 1, 2007 through July 23, 2009 (935 days x $7.15), and $1,928.50 in spread-of-hours compensation from July 24, 2009 through April 15, 2010 (266 days x $7.25), or a total of $9,369.75, in unpaid spread-of-hours compensation from Sal's Grocery and Samuel Olea.

### 3.  Liquidated Damages

77.  An employer who violates the FLSA is liable not only for unpaid wages and overtime compensation, but also for "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  FLSA liquidated damages are compensatory rather than punitive.  Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014).  The defendant bears the burden of proving that liquidated damages are unwarranted by "establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.  The burden . . . is a difficult one to meet, however, and double damages are the norm,

single damages the exception." Reich v. S. New England Telecomm.
Corp., 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks
and citation omitted); accord Gayle v. Harry's Nurses Registry,
Inc., 594 F. App'x 714, 718 (2d Cir. 2014) (summary order), cert.
denied, 135 S. Ct. 2059 (2015); Kim v. Kum Gang, Inc., 12 Civ.
6344 (MHD), 2015 WL 2222438 at *27 (S.D.N.Y. Mar. 19, 2015)
(Dolinger, M.J.).

      78.   The NYLL also permits employees to recover as
liquidated damages 25% of the total unpaid wages prior to and
including April 8, 2011 and 100% of the total unpaid wages
thereafter unless the defendant can show that it had a good faith
basis for believing that it was in compliance with the law.  N.Y.
Labor L. § 663(1); see also Alvarez v. 215 N. Ave. Corp., 13 Civ.
7049 (NSR)(PED), 2015 WL 3855285 at *3 (S.D.N.Y. June 19, 2015)
(Román, D.J.) (adopting Report and Recommendation of Davison,
M.J.).  The NYLL's good faith standard for awarding liquidated
damages closely resembles the FLSA's good faith standard.  N.Y.
Labor L. § 663(1) ("[U]nless the employer proves a good faith
basis to believe that its underpayment of wages was in compliance
with the law, an additional amount as liquidated damages equal to
one hundred percent of the total of such underpayments [will] be
due"); Inclan v. New York Hosp. Grp., 12 Civ. 4498 (NRB), 2015 WL
1399599 at *11 (S.D.N.Y. Mar. 26, 2015) (Buchwald, D.J.) (noting

that the NYLL's good faith standard parallels the FLSA's good faith standard).[18]   However, unlike FLSA liquidated damages, NYLL liquidated damages are designed to be punitive.  Reilly v. NatWest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999); accord Nunez v. Francis Deli Grocery, 13 Civ. 4894 (ER)(KNF), 2015 WL 1963630 at *4 (S.D.N.Y. Apr. 30, 2015) (Ramos, D.J.) (adopting Report and Recommendation of Fox, M.J.).

79.   Courts in this Circuit disagree as to whether a plaintiff may recover liquidated damages under both the FLSA and NYLL for the same violation.  Nunez v. Francis Deli Grocery, supra, 2015 WL 1963630 at *4; Perez v. Platinum Plaza 400 Cleaners, Inc., 12 Civ. 9353 (PAC), 2015 WL 1881080 at *3 (S.D.N.Y. Apr. 24, 2015) (Crotty, D.J.) (noting a "split of authority"); Rosendo v. Everbrighten Inc., supra, 2015 WL 1600057 at *5-*6 (collecting cases granting and denying the award of both federal and state liquidated damages).  "[M]ost courts have held that a

---

[18]"Until 2009, liquidated damages were imposed only if the employee demonstrated that his employer's violation was willful," but "[e]ffective November 24, 2009, New York law incorporated the federal standard and shifted the burden of proof to the employer" to prove a good faith basis for believing that their underpayment of wages complied with the law.  Galeana v. Lemongrass on Broadway Corp., 10 Civ. 7270 (GBD)(MHD), 2014 WL 1364493 at *8 (S.D.N.Y. Apr. 4, 2014) (Daniels, D.J.) (adopting Report and Recommendation of Dolinger, M.J.).  Further, even under the NYLL's pre-November 24, 2009 standard, a defendant's default and failure to timely respond to or participate in proceedings was sufficient to establish a willful violation.  See Galeana v. Lemongrass on Broadway Corp., supra, 2014 WL 1364493 at *8.

plaintiff who satisfies both statutes may recover liquidated damages under both."  Kim v. Kum Gang, Inc., supra, 2015 WL 2222438 at *29 (collecting cases); see Switzoor v. SCI Eng'g, P.C., 11 Civ. 9332 (RA), 2013 WL 4838826 at *5 (S.D.N.Y. Sept. 11, 2013) (Abrams, D.J.) (noting that the "majority view" is to award both FLSA and NYLL liquidated damages).  These courts reason that "[b]ecause liquidated damages under the FLSA and NYLL 'serve fundamentally different purposes,' a court may order separate awards under both statutes."  He v. Home on 8th Corp., 09 Civ. 5630 (GBD), 2014 WL 3974670 at *7 (S.D.N.Y. Aug. 13, 2014) (Daniels, D.J.), quoting Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (Dolinger, M.J.) (noting that the FLSA's liquidated damages provision is compensatory, whereas the NYLL provides for liquidated damages as a penalty to deter employers); contra Inclan v. New York Hosp. Grp., Inc., supra, 2015 WL 1399599 at *12 (declining to award both NYLL and FLSA liquidated damages because any distinction between the purposes of the two was "undermined" by amendments to the NYLL which made it virtually identical to the FLSA after November 23, 2009).  I shall follow the majority view and conclude that plaintiffs may recover liquidated damages under both the FLSA and NYLL.

a.  Melgadejo's
Liquidated Damages

80.  Melgadejo seeks an award of $93,717.00 in FLSA liquidated damages and $117,182.06 in NYLL liquidated damages, or $210,899.06 in combined liquidated damages (Platzek Aff. ¶¶ 17-18).

81.  Because Melgadejo did not file his complaint until September 11, 2012, his claim for FLSA liquidated damages is time-barred with respect to claims arising out of work done before September 11, 2009.

82.  Melgadejo may recover NYLL liquidated damages for the entire time he worked for defendants.

i.  Liquidated Damages
Owed to Malgadejo by
Sal's Grocery and Samuel Olea

83.  From September 11, 2009 through April 30, 2010, Melgadejo worked for Sal's Grocery for 33.1 weeks (232 days ÷ seven days per week); his unpaid wages were $20,555.10 (he was underpaid $621.00 per week for 33.1 weeks).  He should be awarded $20,555.10 as FLSA liquidated damages for this time period.

84.  From June 1, 2008 through April 30, 2010, Melgadejo worked for Sal's Grocery for 99.9 weeks (699 days ÷ seven days per week); his unpaid wages were $62,037.90 (he was

46

underpaid $621.00 per week for 99.9 weeks).  Twenty-five percent of $62,037.90 is $15,509.48, which Melgadejo should be awarded as NYLL liquidated damages.

85.  Adding the foregoing amounts of liquidated damages yields a sum of $36,064.58 ($20,555.10 + $15,509.48).  Melgadejo should be awarded this sum as liquidated damages against Sal's Grocery and Samuel Olea.

ii.  Liquidated Damages
Owed to Melgadejo by Sal's
<u>Grocery, S&D Grocery and Samuel Olea</u>

86.  From May 1, 2010 to April 30, 2011, Melgadejo worked for both Sal's Grocery and S&D Grocery for 52.1 weeks (365 days ÷ seven days per week); his unpaid wages for this time period are $32,354.10 (he was underpaid $621.00 for 52.1 weeks). He should be awarded $32,354.10 as FLSA liquidated damages.

87.  From May 1, 2010 through April 8, 2011, Melgadejo worked for both Sal's Grocery and S&D Grocery for 49 weeks (343 days ÷ seven days per week); his unpaid wages for this time period are $30,429.00 (he was underpaid $621.00 per week for 49 weeks).  Twenty-five percent of $30,429.00 is $7,607.25, which Melgadejo should be awarded as NYLL liquidated damages for this time period.

88.   From April 9, 2011 through April 30, 2011, Melgadejo worked for both Sal's Grocery and S&D Grocery for 3.1 weeks (22 days ÷ seven days per week); his unpaid wages for this time period are $1,925.10 (he was underpaid $621.00 per week for 3.1 weeks), which Melgadejo should be awarded as NYLL liquidated damages.

89.   Adding the foregoing amounts of liquidated damages yields a sum of $41,886.45 ($32,354.10 + $7,607.25 + $1,925.10). Melgadejo should be awarded this sum as liquidated damages against Sal's Grocery, S&D Grocery and Samuel Olea.

b.   Aviles'
   Liquidated Damages

90.   Aviles seeks an award of $77,071.50 in FLSA liquidated damages and $125,886.83 in NYLL liquidated damages, or $202,958.33 in combined liquidated damages (Platzek Aff., Ex. W).

91.   Because Aviles did not file his consent form until April 19, 2013, his claim for FLSA liquidated damages is time-barred with respect to claims arising out of work done before April 19, 2010.

92.   With respect to the NYLL, because Melgadejo filed the complaint on September 11, 2012, Aviles' claim for NYLL liquidated damages is time-barred with respect to claims arising out of work done before September 11, 2006.

48

i.   Liquidated Damages
Owed to Aviles by Sal's
Grocery and Samuel Olea

93.   From April 19, 2010 through August 31, 2011, Aviles worked for Sal's Grocery for 71.4 weeks (500 days ÷ seven days per week); his unpaid wages for this time period are $60,642.45 (he was underpaid $676.50 per week for 16 weeks and $899.25 per week for 55.4 weeks).  He should be awarded $60,642.45 as FLSA liquidated damages for this time period.

94.   From September 11, 2006 through April 8, 2011, Aviles worked for Sal's Grocery for 238.7 weeks (1,671 days ÷ seven days per week); his unpaid wages for this time period are $202,399.73 (he was underpaid $676.50 per week for 55 weeks and $899.25 per week for 183.7 weeks).  Twenty-five percent of $202,399.73 is $50,599.93, which Aviles should be awarded as NYLL liquidated damages for this time period.

95.   From April 9, 2011 through August 31, 2011, Aviles worked for Sal's Grocery for 20.7 weeks (145 days ÷ seven days per week); his unpaid wages for this time period are $17,500.73 (he was underpaid $676.50 per week for 5 weeks and $899.25 per week for 15.7 weeks).  He should be awarded $17,500.73 as NYLL liquidated damages for this time period.

49

96.   Adding the foregoing amounts of liquidated damages yields a sum of $128,743.11 ($60,642.45 + $50,599.93 + $17,500.73).  Aviles should be awarded this sum as liquidated damages against Sal's Grocery and Samuel Olea.

ii.   Liquidated Damages
Owed to Aviles by S&D
Grocery and Samuel Olea

97.   From September 1, 2011 through April 30, 2012, Aviles worked for S&D Grocery for 34.7 weeks (243 days ÷ seven days per week); his unpaid wages for this time period are $18,321.60 (he was underpaid $528.00 per week for 34.7 weeks). He should be awarded twice this sum, for a total of $36,643.20, as combined NYLL and FLSA liquidated damages for this time period against S&D Grocery and Samuel Olea.

c.   Cortes' Liquidated Damages
against Sal's Grocery and Samuel Olea

98.   Cortes seeks an award of $48,960.00 in FLSA liquidated damages and $56,376.00 in NYLL liquidated damages, or $105,336.00 in combined liquidated damages (Platzek Aff., Ex. W).

99.   Because Cortes did not file his consent form until April 19, 2013, his claim for FLSA liquidated damages is time-barred with respect to claims arising out of work done before April 19, 2010.

100.  Cortes may recover NYLL liquidated damages for the entire time period he worked for Sal's Grocery.

101.  From April 19, 2010 through November 30, 2012, Cortes worked for Sal's Grocery for 136.7 weeks (957 days ÷ seven days per week); his unpaid wages for this time period are $49,212.00 (he was underpaid $360.00 per week for 136.7 weeks). He should be awarded $49,212.00 as FLSA liquidated damages for this time period.

102.  From February 1, 2010 through April 8, 2011, Cortes worked for Sal's Grocery for 61.7 weeks (432 days ÷ seven days per week); his unpaid wages for this time period are $22,212.00 (he was underpaid $360.00 per week for 61.7 weeks). Twenty-five percent of $22,212.00 is $5,553.00, which Cortes should be awarded as NYLL liquidated damages.

103.  From April 9, 2011 through November 30, 2012, Cortes worked for Sal's Grocery for 86 weeks (602 days ÷ seven days per week); his unpaid wages for this time period are $30,960.00 (he was underpaid $360.00 per week for 86 weeks). Cortes should be awarded $30,960.00 as NYLL liquidated damages for this time period.

104.  Adding the foregoing amounts of liquidated damages yields a sum of $85,725.00 ($49,212.00 + $5,553.00 +

$30,960.00).  Cortes should be awarded this sum as liquidated

damages against Sal's Grocery and Samuel Olea.

> d.  Gonzalez's
>     Liquidated Damages

105.  Gonzalez seeks an award of $10,608.00 in FLSA

liquidated damages and $47,642.85 in NYLL liquidated damages, or

$58,250.85 in combined liquidated damages (Platzek Aff., Ex. W).

106.  Because Gonzales did not file his consent form

until April 19, 2013, his claim for FLSA liquidated damages is

time-barred with respect to claims arising out of work done

before April 19, 2010.

107.  Gonzalez may recover NYLL liquidated damages for

the entire time he worked for defendants.

> i.  Liquidated Damages
>     Owed to Gonzalez by
>     Sal's Grocery and Samuel Olea

108.  From July 1, 2008 through December 31, 2008,

Gonzalez worked for Sal's Grocery for 26.3 weeks (184 days ÷

seven days per week); his unpaid wages for this time period are

$12,939.60 (he was underpaid $492.00 per week for 26.3 weeks).

Twenty-five percent of $12,939.60 is $3,234.90, which Gonzalez

should be awarded as NYLL liquidated damages against Sal's

Grocery and Samuel Olea.

52

                    ii.   Liquidated Damages
                          Owed to Gonzalez by
                          S&D Grocery and Samuel Olea


        109.  From April 19, 2010 through October 31, 2010,

Gonzalez worked for S&D Grocery for 28 weeks (196 days ÷ seven

days per week); his unpaid wages for this time period are

$11,424.00 (he was underpaid $408.00 per week for 28 weeks).  He

should be awarded $11,424.00 as FLSA liquidated damages for this

time period.

        110.  From January 1, 2009 through October 31, 2010,

Gonzalez worked for S&D Grocery for 95.6 weeks (669 days ÷ seven

days per week); his unpaid wages for this time period are

$39,004.80 (he was underpaid $408.00 per week for 95.6 weeks).

Twenty-five percent of $39,004.80 is $9,751.20, which Gonzalez

should be awarded as NYLL liquidated damages for this time

period.

        111.  Adding the foregoing amounts of liquidated

damages yields a sum of $21,175.20 ($11,424.00 + $9,751.20).

Gonzalez should be awarded this sum as liquidated damages against

S&D Grocery and Samuel Olea.

            e.  Hernandez's Liquidated Damages
                against Sal's Grocery and Samuel Olea

112.  Hernandez seeks an award of $16,318.29 in FLSA liquidated damages and $16,318.29 in NYLL liquidated damages, or $32,636.58 in combined liquidated damages (Platzek Aff., Ex. W).

113.  Because Hernandez did not file her consent form until April 19, 2013 and ceased working for defendants prior to April 19, 2010, her claim for FLSA liquidated damages is time-barred.

114.  With respect to the NYLL, because Melgadejo filed the complaint on September 11, 2012, Hernandez's claim for NYLL liquidated damages is time-barred with respect to claims arising out of work done before September 11, 2006.

115.  From September 11, 2006 through December 31, 2006, Hernandez worked for Sal's Grocery for 16 weeks (112 days ÷ seven days per week); her unpaid wages for this time period are $3,486.08 (she was underpaid $20.00 per week in regular minimum wage compensation and $197.88 per week in overtime compensation for 16 weeks).  Twenty-five percent of $3,486.08 is $871.52, which Hernandez should be awarded as NYLL liquidated damages for this time period.

116.  From January 1, 2007 through July 23, 2009, Hernandez worked for Sal's Grocery for 133.6 weeks (935 days ÷

54

seven days per week); her unpaid wages for this time period are $35,334.53 (she was underpaid $36.00 per week in regular minimum wage compensation and $228.48 per week in overtime compensation for 133.6 weeks).  Twenty-five percent of $35,334.53 is $8,833.63, which Hernandez should be awarded as NYLL liquidated damages for this time period.

117.  From July 24, 2009 to April 15, 2010, Hernandez worked for Sal's Grocery for 38 weeks (266 days ÷ seven days per week); her unpaid wages for this time period are $10,492.94 (she was underpaid $40.00 per week in regular minimum wage compensa- tion and $236.13 per week in overtime compensation for 38 weeks).  Twenty-five percent of $10,492.94 is $2,623.24, which Hernandez should be awarded as NYLL liquidated damages for this time period.

118.  Additionally, from September 11, 2006 through April 15, 2010, Hernandez was underpaid an additional $9,369.75 in unpaid spread-of-hours compensation by Sal's Grocery (she was underpaid $6.75 per day for the 112 days between September 11, 2006 and December 31, 2006, $7.15 per day for the 935 days between January 1, 2007 through July 23, 2009 and $7.25 per day for the 266 days between July 24, 2009 and April 15, 2010).  Twenty-five percent of $9,369.75 is $2,342.44, which Hernandez should be awarded as additional NYLL liquidated damages.

119.  Adding the foregoing amounts of liquidated damages yields a sum of $14,670.83 ($871.52 + $8,833.63 + $2,623.24 + $2,342.44).  Hernandez should be awarded this sum as NYLL liquidated damages against Sal's Grocery and Samuel Olea.

        f.  Martinez's
           Liquidated Damages

120.  Martinez seeks an award of $29,700.00 in FLSA liquidated damages and $35,565.08 in NYLL liquidated damages, or $65,265.08 in combined liquidated damages (Platzek Aff., Ex. W).

121.  Because Martinez did not file his consent form until May 6, 2013, his claim for FLSA liquidated damages is time-barred with respect to claims arising out of work done before May 6, 2010.

122.  Martinez may recover NYLL liquidated damages for the entire time he worked for defendants.

        i.  Liquidated Damages
           Owed to Martinez by
           Sal's Grocery and Samuel Olea

123.  From May 6, 2010 to August 31, 2010, Martinez worked for Sal's Grocery for 16.9 weeks (118 days ÷ seven days per week); his unpaid wages for this time period are $11,027.25 (he was underpaid $652.50 per week for 16.9 weeks).  He should be

awarded $11,027.25 as FLSA liquidated damages for this time period.

      124.   From January 1, 2011 through April 30, 2011, Martinez worked for Sal's Grocery for 17.1 weeks (120 days ÷ seven days per week); his unpaid wages for this time period are $11,157.75 (he was underpaid $652.50 per week for 17.1 weeks). He should be awarded $11,157.75 as FLSA liquidated damages for this time period.

      125.   From April 1, 2009 through August 31, 2010, Martinez worked for Sal's Grocery for 74 weeks (518 days ÷ seven days per week); his unpaid wages for this time period are $48,285.00 (he was underpaid $652.50 per week for 74 weeks). Twenty-five percent of $48,285.00 is $12,071.25, which Martinez should be awarded as NYLL liquidated damages for this time period.

      126.   From January 1, 2011 through April 8, 2011, Martinez worked for Sal's Grocery for 14 weeks (98 days ÷ seven days per week); his unpaid wages for this time period are $9,135.00 (he was underpaid $652.50 per week for 14 weeks). Twenty-five percent of $9,135.00 is $2,283.75, which Martinez should be awarded as NYLL liquidated damages for this time period.

127.   From April 9, 2011 through April 30, 2011, Martinez worked for Sal's Grocery for 3.1 weeks (22 days ÷ seven days per week); his unpaid wages for this time period are $2,022.75 (he was underpaid $652.50 per week for 3.1 weeks). Martinez should be awarded $2,022.75 as NYLL liquidated damages for this time period.

128.   Adding the foregoing amounts of liquidated damages yields a sum of $38,562.75 ($11,027.25 + $11,157.75 + $12,071.25 + $2,283.75 + $2,022.75).   Martinez should be awarded this sum as liquidated damages against Sal's Grocery and Samuel Olea.

> ii.   Liquidated Damages
> Owed to Martinez by
> S&D Grocery and Samuel Olea

129.   From September 1, 2010 through December 31, 2010, Martinez worked for S&D Grocery for 17.4 weeks (122 days ÷ seven days per week); his unpaid wages for this time period are $11,353.50 (he was underpaid $625.50 per week for 17.4 weeks). He should be awarded $11,353.50 as FLSA liquidated damages for this time period.

130.   Additionally, Martinez should be awarded twenty-five percent of his unpaid wages -- or $2,838.38 -- as NYLL liquidated damages for the same time period.

131.  Adding the foregoing amounts of liquidated damages yields a sum of $14,191.88 ($11,353.50 + $2,838.38). Martinez should be awarded this sum as liquidated damages against S&D Grocery and Samuel Olea.

g.  Andres Olea's Liquidated Damages
    against Sal's Grocery and Samuel Olea

132.  Andres Olea seeks an award of $72,000.00 in FLSA liquidated damages and $41,760.00 in NYLL liquidated damages, or $113,760.00 in combined liquidated damages (Platzek Aff., Ex. W).

133.  Because Andres Olea did not file his consent form until April 19, 2013, his claim for FLSA liquidated damages is time-barred with respect to claims arising out of work done before April 19, 2010.

134.  With respect to the NYLL, because Melgadejo filed the complaint on September 11, 2012, Andres Olea's claim for NYLL liquidated damages is time-barred with respect to claims arising out of work done before September 11, 2006.

135.  From April 19, 2010 through December 31, 2011, Andres Olea worked for Sal's Grocery for 88.9 weeks (622 days ÷ seven days per week); his unpaid wages for this time period are $58,340.63 (he was underpaid $656.25 per week for 88.9 weeks). He should be awarded $58,340.63 as FLSA liquidated damages for this time period.

136.   From September 11, 2006 through December 31, 2006, Andres Olea worked for Sal's Grocery for 16 weeks (112 days ÷ seven days per week); his unpaid wages for this time period are $7,352.80 (he was underpaid $459.55 per week for 16 weeks). Twenty-five percent of $7,352.80 is $1,838.20, which Andres Olea should be awarded as NYLL liquidated damages for this time period.

137.   From January 1, 2007 through April 8, 2011, Andres Olea worked for Sal's Grocery for 222.7 weeks (1,559 days ÷ seven days per week); his unpaid wages for this time period are $146,146.88 (he was underpaid $656.25 per week for 222.7 weeks). Twenty-five percent of $146,146.88 is $36,536.72, which Andres Olea should be awarded as NYLL liquidated damages for this time period.

138.   From April 9, 2011 through December 31, 2011, Andres Olea worked for Sal's Grocery for 38.1 weeks (267 days ÷ seven days per week); his unpaid wages for this time period are $25,003.13 (he was underpaid $656.25 per week for 38.1 weeks). He should be awarded this amount as NYLL liquidated damages for this time period.

139.   Adding the foregoing amounts of liquidated damages yields a sum of $121,718.68 ($58,340.63 + 1,838.20 +

$36,536.72 + $25,003.13).  Andres Olea should be awarded this sum as liquidated damages against Sal's Grocery and Samuel Olea.

### h.  Summary

140.  Accordingly, each plaintiff is owed the following in liquidated damages:  (1) Melgadejo, $36,064.58 against Sal's Grocery and Samuel Olea and $41,886.45 against Sal's Grocery, S&D Grocery and Samuel Olea; (2) Aviles, $128,743.11 against Sal's Grocery and Samuel Olea and $36,643.20 against S&D Grocery and Samuel Olea; (3) Cortes, $85,725.00 against Sal's Grocery and Samuel Olea; (4) Gonzalez, $3,234.90 against Sal's Grocery and Samuel Olea and $21,175.20 against S&D Grocery and Samuel Olea; (5) Hernandez, $14,670.83 against Sal's Grocery and Samuel Olea; (6) Martinez, $38,562.75 against Sal's Grocery and Samuel Olea and $14,191.88 against S&D Grocery and Samuel Olea; and (7) Andres Olea, $121,718.68 against Sal's Grocery and Samuel Olea.

### 4.  NYLL Statutory Damages for Defendant's Failure to Furnish Proper Wage Statements

141.  Plaintiff Melgadejo and opt-in plaintiffs Aviles, Cortes, Gonzalez, Hernandez, and Andres Olea also seek statutory damages awards of $2,500.00 because they were not provided with

wage statements as required by the NYLL (Compl. ¶¶ 67-70; Platzek
Aff. ¶¶ 19, 21-23, 25, 27 & Ex. W).[19]

142.   New York's Wage Theft Prevention Act ("WTPA")
"obligates an employer to furnish each employee with a statement
with every payment of wages, listing information about the rate
and basis of pay, any allowances and deductions, and the em-
ployer's identity and contact details." Yuquilema v. Manhattan's
Hero Corp., 13 Civ. 461 (WHP)(JLC), 2014 WL 4207106 at *11
(S.D.N.Y. Aug. 26, 2014) (Cott, M.J.) (Report & Recommendation)
(internal quotation marks and citation omitted), adopted at, 2014
WL 5039428 (S.D.N.Y. Sept. 30, 2014) (Pauley, D.J.); see N.Y.
Labor L. § 195(3).

143.   For the period between April 9, 2011 and February
27, 2015, the WTPA permitted employees to recover "damages of
[$100.00] for each week that the violations occurred . . . but
not to exceed a total of [$2,500.00]." N.Y. Labor L. § 198(1-d)
(McKinney 2011); 2010 N.Y. Sess. Laws ch. 564 (McKinney). How-
ever, "an employee may not recover for wage statement violations
that occurred before April 9, 2011." Canelas v. A'Mangiare Inc.,
13 Civ. 3630 (VB), 2015 WL 2330476 at *5 (S.D.N.Y. May 14, 2015)

---

[19]Opt-in plaintiff Martinez does not seek statutory damages
for NYLL wage statement violations (Platzek Aff., Ex. W).

(Briccetti, D.J.), citing Inclan v. New York Hosp. Grp., Inc.,
supra, 2015 WL 1399599 at *8.

        a.  Melgadejo's Entitlement to
           Statutory Damages for Defendants'
           Failure to Furnish Proper Wage Statements

144.  Melgadejo seeks $2,500.00 in damages for Sal's
Grocery's and S&D Grocery's failure to provide him with proper
wage statements from June 1, 2008 through April 30, 2011 (Platzek
Aff. ¶ 19).

145.  Because an employee may not recover for wage
statement violations that occurred prior to April 9, 2011, I
recommend that Melgadejo be awarded statutory damages for the
three weeks he worked at Sal's Grocery and S&D Grocery from April
9, 2011 to April 30, 2011, for a total of $300.00 in statutory
damages (three weeks x $100.00) from Sal's Grocery, S&D Grocery
and Samuel Olea.

        b.  Aviles' Entitlement to
           Statutory Damages for Defendants'
           Failure to Furnish Proper Wage Statements

146.  Aviles seeks $2,500.00 in damages for Sal's
Grocery's and S&D Grocery's failure to provide him with proper
wage statements from June 1, 2005 through April 30, 2012 (Platzek

Aff. ¶ 21 & Ex. W).[20]   However, as noted above, an employee may only recover statutory damages for wage statement violations that occurred from April 9, 2011 through April 30, 2012.

147.   From April 9, 2011 through August 31, 2011, or for 21 weeks, Sal's Grocery failed to furnish Aviles with the required wage statements.   Accordingly, I respectfully recommend Aviles be awarded statutory damages in the amount of $2,100.00 from Sal's Grocery and Samuel Olea.

148.   From September 1, 2011 through April 30, 2012, or for 35 weeks, S&D Grocery failed to furnish Aviles with his proper wage statements.   Accordingly, I respectfully recommend Aviles be awarded statutory damages in the maximum amount of $2,500.00 from S&D Grocery and Samuel Olea.

>    c.   Cortes' Entitlement to
>         Statutory Damages for Defendants'
>         Failure to Furnish Proper Wage Statements

149.   Cortes seeks the statutory maximum of $2,500.00 in damages for Sal's Grocery's failure to provide him with proper wage statements from September 1, 2010 through November 30, 2012

---

[20]Plaintiffs' counsel appears to assume that Aviles may only recover the statutory maximum of $2,500.00 from Sal's Grocery and S&D Grocery collectively.   However, because Sal's Grocery and S&D Grocery are separate entities, Aviles may recover up to the statutory maximum of $2,500.00 in damages from both Sal's Grocery and S&D Grocery for their respective wage statement violations.

(Platzek Aff. ¶ 22 & Ex. W).  Because an employee may not recover for wage statement violations that occurred prior April 9, 2011, Cortes may only recover statutory damages for the 86 weeks he worked from April 9, 2011 through November 30, 2012.

150.  Because Sal's Grocery failed to furnish Cortes with proper wage statements for 86 weeks from April 9, 2011 through November 30, 2012, I respectfully recommend Cortes be awarded statutory damages in the maximum amount of $2,500.00 from Sal's Grocery and Samuel Olea.

        d.  Gonzalez's Entitlement to
            Statutory Damages for Defendants'
            Failure to Furnish Proper Wage Statements

151.  Gonzalez seeks the statutory maximum of $2,500.00 in damages for Sal's Grocery's and S&D Grocery's failure to provide him with proper wage statements from July 1, 2008 through October 31, 2010 (Platzek Aff. ¶ 23 & Ex. W).  Because an employee may not recover for wage statement violations that occurred prior to April 9, 2011, I recommend that Gonzalez not be awarded any statutory damages for defendants' failure to furnish proper wage statements.

e. Hernandez' Entitlement to
   Statutory Damages for Defendants'
   <u>Failure to Furnish Proper Wage Statements</u>

152.  Hernandez seeks the statutory maximum of $2,500.00 in damages for Sal's Grocery's failure to provide her with proper wage statements from May 5, 2006 through April 15, 2010 (Platzek Aff. ¶ 25 & Ex. W).  Because an employee may not recover for wage statement violations that occurred prior to April 9, 2011, I recommend that Hernandez not be awarded any statutory damages for defendants' failure to furnish proper wage statements.

f. Andres Olea's Entitlement to
   Statutory Damages for Defendants's
   <u>Failure to Furnish Proper Wage Statements</u>

153.  Andres Olea seeks the statutory maximum of $2,500.00 in damages for Sal's Grocery's failure to provide him with proper wage statements from June 1, 2000 through December 31, 2011 (Platzek Aff. ¶ 27 & Ex. W).  Because an employee may not recover for wage statement violations that occurred prior to April 9, 2011, Andres Olea may only recover statutory damages for the 38 weeks he worked without receiving a wage statement from April 9, 2011 through December 31, 2011.

154.  Because Sal's Grocery failed to furnish Andres Olea with the required wage statements for 38 weeks from April 9,

2011 through December 31, 2011, I respectfully recommend Andres
Olea be awarded statutory damages in the maximum amount of
$2,500.00 from Sal's Grocery and Samuel Olea.

    D.  <u>Attorneys' Fees and Costs</u>

        1.  <u>Attorneys' Fees</u>

    155.  Plaintiffs also seek $45,499.25 in attorneys'
fees for a total of 144.65 hours of legal work (Platzek Aff. ¶
31; Invoice, at 23).

    156.  Under the FLSA, a court "shall, in addition to
any judgment awarded to the plaintiff or plaintiffs, allow a
reasonable attorney's fee to be paid by the defendant, and costs
of the action."  29 U.S.C. § 216(b); <u>see</u> <u>Jimenez v. KLB Food,
Inc.</u>, 12 Civ. 6796 (JPO), 2015 WL 3947273 at *1 (S.D.N.Y. June
29, 2015) (Oetken, D.J.).  The NYLL also provides that a success-
ful plaintiff may recover attorneys' fees and costs.  N.Y. Labor
L. §§ 198, 663(1).  Whether an attorneys' fee award is reasonable
is within the discretion of the court.  <u>Black v. Nunwood, Inc.</u>,
13 Civ. 7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30,
2015) (Woods, D.J.).

    157.  In determining the amount of reasonable attor-
neys' fees, "[b]oth [the Second Circuit] and the Supreme Court
have held that the lodestar -- the product of a reasonable hourly

rate and the reasonable number of hours required by the case --
creates a 'presumptively reasonable fee.'"  Millea v. Metro-North
R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011), citing Perdue v.
Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010), and Arbor Hill
Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d
182, 183 (2d Cir. 2008).

158.   The party seeking fees bears the burden of
establishing that the hourly rates and number of hours for which
compensation is sought are reasonable.  See Cruz v. Local Union
No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir.
1994).

159.   The contemporaneous time records submitted here
by plaintiffs' counsel satisfy the requirements of New York State
Association for Retarded Children v. Carey, 711 F.2d 1136, 1147-
48 (2d Cir. 1983).

a.   Reasonable Hourly Rates

160.   Plaintiffs' counsel B&A seeks the following
hourly rates:  (1) $500.00 for founding partner Michael Borrelli;
(2) $400.00 for associates Abby Natelson, Alexander T. Coleman,
Ayanna Blake, Jonathan R. Friedman and Russell J. Platzek; (3)
$125.00 for an unidentified "Intern" and (4) $125.00 for
paralegals Ana Guevara, Carolina C. Otero, Kristina M. Travone,

Jarissa Peralta, Yamile Z. Prendes and Anamda Fortuna (Invoice, passim).

161.   The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  "[C]ourts should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 192, quoting In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).  Courts should consider the rates approved in other cases in the district as well as any evidence offered by the parties. Farbotko v. Clinton Cty. of New York, 433 F.3d 204, 208-09 (2d Cir. 2005).  The court is also free to rely on its own familiarity with prevailing rates in the district.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).  Further,

69

"where appropriate [courts may] employ out-of-district rates in calculating the fee due."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 192-93.

162.   In determining reasonable hourly rates, a court should first examine the attorneys' experience.  Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009) (Holwell, D.J.), citing Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (Ward, D.J.).

163.   "[A]ttorneys in FLSA cases typically command hourly rates . . . of between $250 and $450 per hour, depending on their level of experience."  Rosendo v. Everbrighten Inc., supra, 2015 WL 1600057 at *8, citing Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (Marrero, D.J.) (adopting Report and Recommendation of Maas, M.J.).

### i.  Michael Borrelli

164.   Michael Borrelli is the founding and managing partner of B&A with approximately 11 years of labor and employment litigation experience in state and federal courts (Platzek Aff. ¶¶ 32, 44-45).  B&A bills $500 per hour for Borrelli and seeks that hourly rate for him (Platzek Aff. ¶48; Invoice, at 23).

165.  The rate B&A seeks for Borrelli is greater than
that which courts within this district generally award for
partners and experienced litigators in FLSA cases.  See, e.g.,
Black v. Nunwood, Inc., supra, 2015 WL 1958917 at *5 (noting that
"this district has frequently awarded experienced partners an
hourly rate of $350, sometimes more"); Wong v. Hunda Glass
Corp., supra, 2010 WL 3452417 at *3 ("[T]he range of fees in this
District for civil rights and employment law litigators with
approximately ten years' of experience is between $250 per hour
and $350 per hour."); Liang Huo v. Go Sushi Go 9th Ave., supra,
2014 WL 1413532 at *7-*8 (awarding $350 for attorney with almost
10 years of experience).

166.  The rate B&A seeks for Borrelli is also greater
than those that have been awarded to Borrelli in recent wage and
hour cases. See, e.g., Collado v. Donnycarney Rest. L.L.C., 14
Civ. 3899 (GBD)(HBP), 2015 WL 4737917 at *11 (S.D.N.Y. Aug. 10,
2015) (Daniels, D.J.) (adopting Report and Recommendation) ($350
rate for Borrelli); Alvarez v. 215 N. Ave. Corp., supra, 2015 WL
3855285 at *8 ($350 rate for Borrelli); Patino v. Brady Parking,
Inc., 11 Civ. 3080 (AT)(DF), 2015 WL 2069743 at *2-*3 (S.D.N.Y.
Apr. 30, 2015) (Freeman, M.J.) ($400 rate for Borrelli); Juarez
v. Precision Apparel, Inc., No. 12-CV-2349 (ARR)(VMS), 2013 WL
5210142 at *14 (E.D.N.Y. Sept. 13, 2013) ($350 rate for

Borrelli).  Accordingly, I conclude that Borrelli be awarded a
reduced hourly rate of $350.00 per hour.

### ii.   Alexander T. Coleman
### and Russell J. Platzek

167.  Alexander T. Coleman is "Lead Associate" at B&A
with 5 years of experience at B&A and oversees and directly
supervises all B&A associates' work (Platzek Aff. ¶ 50).  He has
litigated numerous employment discrimination and wage and hour
cases in both state and federal courts (Platzek Aff. ¶ 50).  B&A
bills $400 per hour for Coleman and seeks that hourly rate for
him (Platzek Aff. ¶ 51; Invoice, at 23).

168.  Russell J. Platzek is an associate with B&A who
graduated from law school in 1998, was labor counsel for the New
York City Department of Education for five years and practiced as
an associate in two other law firms prior to joining B&A as an
associate in February 2013 (Platzek Aff. ¶ 58).  B&A typically
bills $400 per hour for Platzek and seeks that hourly rate for
him (Platzek Aff. ¶ 59; Invoice).

169.  Although both Platzek and Coleman have signifi-
cant experience in employment law litigation, the $400 rate B&A
seeks for both is greater than what courts within this district
generally award experienced or senior associates in FLSA cases.
See e.g., Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509,

514 (S.D.N.Y. 2011)(Peck, M.J.) (holding that a rate of $300 for
experienced associates "[is] consistent with rates awarded by the
courts in other FLSA or similar statutory fee cases"); see also
Herrera v. Tri-State Kitchen & Bath, Inc., No. 14-CV-1695
(ARR)(MDG), 2015 WL 1529653 at *14 (E.D.N.Y. Mar. 31, 2015)
("Courts have recently recognized that hourly rates range from
approximately $200 to $250 for [experienced] associates . . .
."); Jemine v. Dennis, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012)
(awarding a $250 rate for a senior associate with nine years
experience in employment law).

170.   The $400 rate sought is also greater than that
which experienced B&A associates, and specifically Coleman, have
been awarded in recent wage and hour cases.  See, e.g., Collado
v. Donnycarney Rest. L.L.C., supra, 2015 WL 4737917 at *11 ($275
rate for Coleman); Alvarez v. 215 N. Ave. Corp., supra, 2015 WL
3855285 at *8 ($275 rate for Coleman); Patino v. Brady Parking,
Inc., supra, 2015 WL 2069743 at *2-*3 ($325 rate for Coleman).
Accordingly, I conclude that Coleman and Platzek be awarded
reduced hourly rates of $275.00 per hour.

### iii.   The Remaining B&A Associates

171.   Abby Natelson is a former associate of B&A who
graduated from law school in 2008 and practiced at two other law

firms prior to joining B&A in May 2012 as an associate (Platzek Aff. ¶ 52).  B&A bills $400 per hour for Natelson and seeks that hourly rate for her (Platzek Aff. ¶ 53; Invoice, at 23).

172.  Jonathan Friedman is a former associate of B&A who was admitted to practice law in 2010 and served as general counsel for a labor union for two years prior to joining B&A in August 2012 as an associate (Platzek Aff. ¶ 54).  B&A typically bills $400 per hour for Friedman and seeks that hourly rate for him (Platzek Aff. ¶ 55; Invoice, at 23).

173.  Ayanna Blake is a former associate of B&A who graduated from law school in 2005 and worked as an assistant district attorney for Kings County, New York for five years prior to joining B&A in August 2012 as an associate (Platzek Aff. ¶ 56).  B&A typically bills $400 per hour for Blake and seeks that hourly rate for her (Platzek Aff. ¶ 57; Invoice, at 23).

174.  The $400 rate B&A seeks for Natelson, Friedman, and Blake is significantly higher than what courts within this district typically award associates with comparable, or even greater, experience.  See, e.g., Black v. Nunwood, Inc., supra, 2015 WL 1958917 at *6 (awarding a senior associate with nine years' experience a $285 rate and a junior associate with three years' experience a $200 rate); Marquez v. Erenler, Inc., 12 Civ. 8580 (GHW), 2014 WL 5847441 at *3 (S.D.N.Y. Nov. 10, 2014)

(Woods, D.J.) ("[C]ourts award a rate of $200 per hour for associates with three to four years of experience."); Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *2 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (reducing the rate of an associate with nine years of experience to $250 and the rate of associates with three years of experience to $200).

175.   The requested $400 rate is also higher than what has been awarded to B&A associates of similar experience in previous wage and hour cases.  See, e.g., Collado v. Donnycarney Rest. L.L.C., supra, 2015 WL 4737917 at *11 ($250 rate for associate); Patino v. Brady Parking, Inc., supra, 2015 WL 2069743 at *2-*3 ($250 rate for two associates); Juarez v. Precision Apparel, Inc., supra, 2013 WL 5210142 at *14 ($250 rate for Friedman).  Accordingly, I conclude that Natelson, Friedman and Blake be awarded reduced hourly rates of $250.00 per hour.

### iv.   Paralegals

176.   Ana Guevara is a bilingual paralegal who has worked for B&A for four years and has an associates degree and paralegal certificate from Nassau Community College (Platzek Aff. ¶ 60).  Carolina C. Otero is a former paralegal with B&A (Platzek Aff. ¶ 61).  Kristina M. Travone is a former paralegal with B&A and earned her undergraduate degree from SUNY-Stony Brook

(Platzek Aff. ¶ 62).  Jarissa Peralta is a bilingual paralegal
with B&A and is currently an undergraduate student at Borough of
Manhattan Community College (Platzek Aff. ¶ 63).  Yamile Z.
Prendes is a former bilingual paralegal with B&A (Platzek Aff. ¶
64).  Anamda Fortuna is a bilingual paralegal with B&A and is
currently an undergraduate student at John Jay College of Crimi-
nal Justice (Platzek Aff. ¶ 65).  B&A bills $125 per hour for
paralegals and seeks that hourly rate for Guevara, Otero,
Travone, Peralta, Prendes and Fortuna (Platzek Aff. ¶ 66).

        177.  The rate B&A seeks for paralegals, while within
the range of what courts in this district have awarded in employ-
ment cases in the past, is higher than what is generally awarded.
See, e.g., Reiseck v. Universal Commc'ns of Miami, Inc., 06 Civ.
0777 (LGS)(JCF), 2014 WL 5374684 at *6 (S.D.N.Y. Sept. 4, 2014)
(Francis, M.J.) (Report and Recommendation) ($95 to $115 for
paralegals), adopted at, 2014 WL 5364081 (S.D.N.Y. Oct. 22, 2014)
(Schofield, D.J.); Merino v. Beverage Plus Am. Corp., 10 Civ. 706
(ALC)(RLE), 2012 WL 4468182 at *2-*3 (S.D.N.Y. Sept. 25, 2012)
(Carter, D.J.) (noting ERISA cases awarding a $150 rate award for
paralegals but reducing a requested paralegal rate of $125 to
$100 in an FLSA and NYLL case); see also Gunawan v. Sake Sushi
Rest., 897 F. Supp. 2d 76, 95 (E.D.N.Y. 2012) (reducing a re-
quested rate of $125 for paralegals to $75).

178.  An hourly rate of $125 is also higher than what has been awarded to B&A paralegals in previous wage and hour cases.  See, e.g., Collado v. Donnycarney Rest. L.L.C., supra, 2015 WL 4737917 at *11 ($75 to Guevara and another paralegal); Alvarez v. 215 N. Ave. Corp., supra, 2015 WL 3855285 at *8 ($75 to Peralta and one other paralegal); Juarez v. Precision Apparel, Inc., supra, 2013 WL 5210142 at *14 ($75 to Peralta, Prendes and Guevara).  Accordingly, I conclude that Guevara, Otero, Travone, Peralta, Prendes and Fortuna be awarded reduced hourly rates of $90.00 per hour.

### v.  The Unnamed "Intern"

179.  With respect to the "Intern" for whom plaintiffs' counsel requests a rate of $125 per hour, plaintiffs' counsel has failed to provide the identity or qualifications of this individual (Platzek Aff. ¶¶ 32-66; Invoice, at 23).  Accordingly, I conclude that no fees should be awarded for the intern's time.

### b.  Reasonable Number of Hours

180.  The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records. See Forschner Group, Inc. v. Arrow Trading Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998). Next the court looks to "its own familiarity with the case and its experience generally . . . . Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court." AFP Imaging Corp. v. Phillips Medizin Sys., No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994) (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985))).

*     *     *

Finally, billing judgment must be factored into the equation. Hensley, 461 U.S. at 434; DiFilippo, 759 F.2d at 235-36. If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours. In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (stating that "in cases in which substantial numbers of voluminous fee petitions are filed, the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting Carey, 711 F.2d at 1146)); see also United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vagueness in documentation of certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002) (Preska, D.J.); accord Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (Courts "should exclude . . . hours that were not reason-

ably expended," such as where there is overstaffing or the hours
are "excessive, redundant, or otherwise unnecessary." (internal
quotation marks omitted)); see also Gierlinger v. Gleason, 160
F.3d 858, 876 (2d Cir. 1998); Orchano v. Advanced Recovery, Inc.,
107 F.3d 94, 98 (2d Cir. 1997); Marquez v. Erenler, Inc., supra,
2014 WL 5847441 at *3; Finch v. New York State Office of Children
& Family Servs., 861 F. Supp. 2d 145, 151 (S.D.N.Y. 2012)
(Scheindlin, D.J.); Sulkowska v. City of New York, 170 F. Supp.
2d 359, 365 (S.D.N.Y. 2001) (Schwartz, D.J.).

181.   In general, plaintiffs' counsel's time records
reflect that associates Natelson, Blake and Platzek managed the
case with minimal oversight by Borrelli, and properly delegated
appropriate paralegal work to B&A paralegals; these are reason-
able staffing decisions (see Invoice, passim).

182.   However, plaintiffs' counsel seeks reimbursement
for 4.6 hours spent by Borrelli, 1.09 hours spent by Blake, 1.1
hours spent by Platzek, 0.5 hours spent by Coleman and 2.7 hours
spent by Peralta "review[ing] electronic court filing system
bounce[s] and contents therein regarding" court filings and
related email correspondence (see, e.g., Invoice, at March 11,
2013 ATB, JP and MJB entries).  A majority of these "bounces" are
merely notifications that plaintiffs' counsel themselves elec-
tronically filed documents (see, e.g., Invoice, at March 4, 2013

ATB, MJB and JP entries).  The remainder are court orders.
Compensating all timekeepers for the time spent reviewing these
notifications is unreasonable.  See Castellanos v. Deli
Casagrande Corp., No. CV 11-245 (JFB)(AKT), 2013 WL 1207058 at
*11 (E.D.N.Y. Mar. 7, 2013) (reducing award of fees to B&A
attorneys for time spent reviewing ECF bounces).  Thus, I con-
clude that reimbursement for this time be disallowed in its
entirety.

183.  Similarly, plaintiffs' counsel seeks reimburse-
ment for 12.1 hours collectively spent by Borrelli (0.6 hours),
Platzek (0.8 hours), Fortuna (10.5 hours), and Peralta (0.2
hours) "correspond[ing] regarding billing records" and
"revis[ing] billing record[s]" (see e.g., Invoice, at January 10,
2014 AF, RJP and MJB records).  Courts in this district have
frequently held that administrative tasks are not compensable in
fee applications.  See, e.g., Anthony v. Franklin First Fin.,
Ltd., 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (Jones, D.J.)
(reducing a fee award by 20% due, in part, to the inclusion of
administrative tasks performed by attorneys); Barfield v. New
York City Health & Hospitals Corp., 05 Civ. 6319 (JSR), 2006 WL
2356152 at *2 (S.D.N.Y. Aug. 11, 2006) (Rakoff, D.J.), aff'd, 537
F.3d 132 (2d Cir. 2008).  Accordingly, I conclude that reimburse-
ment for this time be disallowed in its entirety.

80

184.  Platzek also seeks reimbursement for 2.0 hours spent traveling to and from court for an appearance on September 8, 2014 (Invoice, at 22).  "Travel time by counsel is compensable, but generally is required to be billed at half rate."  Kim v. Kum Gang, Inc., supra, 2015 WL 3536593 at *6; see also Adusumelli v. Steiner, 08 Civ. 6932 (JMF), 09 Civ. 4902 (JMF), 10 Civ. 4549 (JMF), 2013 WL 1285260 at *5 (S.D.N.Y. Mar. 28, 2013) (Furman, D.J.) ("[C]ourts in the Second Circuit regularly reduce attorneys' fees by 50 percent for travel time" (internal quotation marks and citation omitted)).  Accordingly, I conclude that the number of hours sought by Platzek for travel time be reduced by 1.0 hour.

185.  Additionally, although "block billing is most problematic where large amounts of time (e.g., five hours or more) are block billed," Beastie Boys v. Monster Energy Co., 12 Civ. 6065 (PAE), 2015 WL 3823924 at *18 (S.D.N.Y. June 15, 2015) (Engelmayer, D.J.), block billing is "not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed."  Zimmerman v. Portfolio Recovery Assocs., LLC, 09 Civ. 4602 (PGG), 2013 WL 6508813 at *11 (S.D.N.Y. Dec. 12, 2013) (Gardephe, D.J.) (internal quotation marks and citation omitted).  Here, there is one time entry by Peralta that was block-billed.  However, this entry clearly describes that Peralta

81

used this time to conduct a conference call with plaintiffs and "draft[] affidavits for each" (Invoice, at April 19, 2013 JP entry). Six hours is a reasonable amount of time for a paralegal to spend on these tasks. Because this entry does not prevent the evaluation of the reasonableness of the time spent, no reduction is needed. Beastie Boys v. Monster Energy Co., supra, 2015 WL 3823924 at *19 (collecting cases); see Hnot v. Willis Grp. Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008) (Lynch, then D.J., now Cir. J.).

   186. Finally, plaintiffs' counsel's time records include one entry by Blake and two entries by Natelson, totaling 1.4 hours, that are too vague to permit an analysis of the reasonableness of the time expended. Specifically, there are two entries from Natelson that merely describe the work completed as "Research" and one entry from Blake that merely states "Advise re:" (Invoice, at July 18, 2012 AHN entry, August 20, 2012 AHN entry, April 18, 2013 ATB entry). Courts often reduce or pre-clude fee awards when the time entries are too vague. See, e.g., United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vague time entries). Accordingly, I conclude that reimbursement for these 1.4 hours be disallowed in its entirety.

187.  The remaining hours for which compensation is sought are not vague, excessive or duplicative.  Plaintiffs' counsel spent reasonable hours obtaining the default judgment against defendants, especially in light of the fact that the case ultimately included seven plaintiffs who were entitled to damages.

        c.  Summary

188.  Applying the foregoing reductions and rates yields the following:

| Attorney | Rate | No. of Hours | Fee |
|---|---|---|---|
| Michael J. Borrelli | $350/hour | 6.3 | $2,205.00 |
| Alexander T. Coleman | $275/hour | 0.5 | $137.50 |
| Russell J. Platzek | $275/hour | 32.3 | $8,882.50 |
| Abby Natelson | $250/hour | 17.8 | $4,450.00 |
| Jonathan Friedman | $250/hour | 1.2 | $300.00 |
| Ayanna Blake | $250/hour | 26.33 | $6,582.50 |

| Ana G. Guevara | $90/hour | 1.6 | $144.00 |
| Carolina C. Otero | $90/hour | 1.7 | $153.00 |
| Kristina M. Travone | $90/hour | 1.53 | $137.70 |
| Jarissa Peralta | $90/hour | 29.8 | $2,682.00 |
| Yamile Z. Prendes | $90/hour | 0.3 | $27.00 |
| Anamda Fortuna | $90/hour | 0.5 | $45.00 |
| | Total | 119.86 | $25,746.20 |

189.  Accordingly, I respectfully recommend that plaintiff be awarded $25,746.20 in attorneys' fees.

2.  Costs

190.  Plaintiffs seek an award of costs incurred during this action totaling $1,320.27, including $350.00 in filing fees, $800.80 for service of process, $74.59 in mailing expenses, $43.28 for Westlaw research and $24.00 in travel expenses (Platzek Aff. ¶ 31; Invoice, at 24-25).

191.  Plaintiffs may be reimbursed for the reasonable costs of this action pursuant to both the FLSA and NYLL.  29

84

U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(1).  An award of costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citation omitted); accord LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); Rubenstein v. Advanced Equities, Inc., 13 Civ. 1502 (PGG), 2015 WL 585561 at *9 (S.D.N.Y. Feb. 10, 2015) (Gardephe, D.J.); Jimenez v. KLB Foods, Inc., supra, 2015 WL 3947273 at *4.  Courts, in their discretion, have awarded reasonable costs for various expenses, including computer re-search, attorney transportation and meals, mailing and copying fees and service and filing fees.  See, e.g., Kim v. Kum Gang, Inc., supra, 2015 WL 3536593 at *7; Rosendo v. Everbrighten Inc., supra, 2015 WL 1600057 at *9; Reiseck v. Universal Commc'ns of Miami, Inc., supra, 2014 WL 5374684 at *8; Custodio v. Am. Chain Link & Constr., Inc., 08 Civ. 7148 (GBD)(HBP), 2014 WL 116147 at *18-*20 (S.D.N.Y. Jan. 13, 2014) (Daniels, D.J.) (adopting Report and Recommendation).  Here, the costs are reasonable.

192.  Accordingly, I also recommend that plaintiff be awarded $1,320.27 in costs.

E.  Defendants against whom
    Judgment Should be Entered

193.  The complaint alleges that Samuel Olea is the owner and operator of both Sal's Grocery and S&D Grocery (Compl. ¶ 9).

194.  Plaintiff Melgadejo and opt-in plaintiffs Aviles, Gonzalez and Martinez allege that they were employed by both Sal's Grocery and S&D Grocery (Melgadejo Decl. ¶¶ 2-4; Aviles Decl. ¶¶ 2-4; Gonzalez Decl. ¶¶ 2-4; Martinez Decl. ¶¶ 2-4). Opt-in plaintiffs Cortes, Hernandez, and Andres Olea allege that they were employed by only Sal's Grocery (Cortes Decl. ¶ 2; Hernandez Decl. ¶ 2; Olea Decl. ¶ 2).

195.  The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition is to be construed expansively.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

196.  Accordingly, Sal's Grocery, S&D Grocery and Samuel Olea are Melgadejo's, Aviles', Gonzalez's and Martinez's employers within the meaning of the FLSA and the New York Labor Law; and Sal's Grocery and Samuel Olea are Cortes', Hernandez's and Andres Olea's employers within the meaning of the FLSA and the NYLL.  Ke v. Saigon Grill, supra, 595 F. Supp. 2d at 264-65.

86

IV.  Conclusion

For all the foregoing reasons, I respectfully recommend that damages be awarded to each plaintiff and against the defendants as follows:

| Plaintiff | Defendants Against Whom Judgment Should be Entered | Amount and Reason for Judgment Amounts |
|---|---|---|
| Melgadejo | Sal's Grocery & Samuel Olea | $62,037.90 (unpaid overtime) |
| Melgadejo | Sal's Grocery & Samuel Olea | $36,064.58 (liq. damages) |
| Melgadejo | All Defendants | $32,354.10 (unpaid overtime) |
| Melgadejo | All Defendants | $41,886.45 (liq. damages) |
| Melgadejo | All Defendants | $300.000 (NYLL statutory damages) |
| Aviles | Sal's Grocery & Samuel Olea | $219,900.45 (unpaid overtime) |
| Aviles | Sal's Grocery & Samuel Olea | $128,743.11 (liq. damages) |
| Aviles | Sal's Grocery & Samuel Olea | $2,100.00 (NYLL statutory damages) |
| Aviles | S&D Grocery & Samuel Olea | $18,321.60 (unpaid overtime) |
| Aviles | S&D Grocery & Samuel Olea | $36,643.20 (liq. damages) |
| Aviles | S&D Grocery & Samuel Olea | $2,500.00 (NYLL statutory damages) |

| | | |
|---|---|---|
| <u>Cortes</u> | Sal's Grocery & Samuel Olea | $53,172.00 (unpaid overtime) |
| <u>Cortes</u> | Sal's Grocery & Samuel Olea | $85,725.00 (liq. damages) |
| <u>Cortes</u> | Sal's Grocery & Samuel Olea | $2,500.00 (NYLL statutory damages) |
| <u>Gonzalez</u> | Sal's Grocery & Samuel Olea | $12,939.60 (unpaid overtime) |
| <u>Gonzalez</u> | Sal's Grocery & Samuel Olea | $3,234.90 (liq. damages) |
| <u>Gonzalez</u> | S&D Grocery & Samuel Olea | $39,004.80 (unpaid overtime) |
| <u>Gonzalez</u> | S&D Grocery & Samuel Olea | $21,175.20 (liq. damages) |
| <u>Guzman</u> | All Defendants | $0.00 |
| <u>Hernandez</u> | Sal's Grocery & Samuel Olea | $6,649.60 (unpaid minimum wage) |
| <u>Hernandez</u> | Sal's Grocery & Samuel Olea | $42,663.95 (unpaid overtime) |
| <u>Hernandez</u> | Sal's Grocery & Samuel Olea | $9,369.75 (unpaid spread-of-hours) |
| <u>Hernandez</u> | Sal's Grocery & Samuel Olea | $14,670.83 (liq. damages) |
| <u>Martinez</u> | Sal's Grocery & Samuel Olea | $59,442.75 (unpaid overtime) |
| <u>Martinez</u> | Sal's Grocery & Samuel Olea | $38,562.75 (liq. damages) |
| <u>Martinez</u> | S&D Grocery & Samuel Olea | $11,353.50 (unpaid overtime) |

| Martinez | S&D Grocery & Samuel Olea | $14,191.88 (liq. damages) |
| Andres Olea | Sal's Grocery & Samuel Olea | $178,568.43 (unpaid overtime) |
| Andres Olea | Sal's Grocery & Samuel Olea | $121,718.68 (liq. damages) |
| Andres Olea | Sal's Grocery & Samuel Olea | $2,500.00 (NYLL statutory damages) |
| All Plaintiffs | All Defendants | $25,746.20 (attorneys' fees) |
| All Plaintiffs | All Defendants | $1,320.27 (costs) |

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Ronnie Abrams, United States District Judge, 40 Centre Street, Room 2203, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Abrams.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         October 23, 2015

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Michael J. Borrelli, Esq.
Alexander T. Coleman, Esq.
Russell J. Platzek, Esq.
Law Offices of Borrelli & Associates
Suite 328
1010 Northern Boulevard
Great Neck, New York  11021

Mr. Samuel Olea
S & D Fruits & Vegetables, Inc.
123 East 110th Street
New York, New York  10029

Sal's Fruit, Vegetable and Grocery Inc.
Suite A
57 West Fordham Road
Bronx, New York 10468